UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————X

SHERRI ECCLESTON, Individually and as Parent of,
T.E.,

DAVID COHEN, Individually and as Parent of,
O.C. and O.C.,

JERROLD ROSEN, Individually and as Parent of,
A.R. and O.R.,

                                          Plaintiffs,

          -against-

PINE BUSH CENTRAL SCHOOL DISTRICT,

                                          Defendant.

—————————————————————————X

FILED

MAR 28 2012

USDC WP SDNY

Civil Action No. ECFCase

VERIFIED COMPLAINT

12 CV 2303

JUDGE KARAS

Plaintiffs by their attorneys, METH LAW OFFICES, P.C. complaining of the Defendant, for their complaint alleges, upon information and belief, as follows:

## JURISDICTION AND VENUE

1.     The United States District Court has jurisdiction under 28 U.S.C. §1331 as the causes of action in this pleading arise under Sections 1981, 1983, 1985 and 1988, and 2000d of Title 42 of the United States Code, Title VI of the Civil Rights Act of 1964, and the Fourteenth Amendment to the Constitution of the United States.  The Unites States District Court of the Southern District of New York is the proper venue for this action as the Defendant Pine Bush Central School District is located within the County of Orange and at least one of Plaintiff's resides there.

## PARTIES

2.     Plaintiff Sherri Eccleston is the Mother of T.E. and resides with her minor daughter in the  County of Ulster, State of New York.

3.      Plaintiff David Cohen is the Father of O.C. and D.C. and resides with his minor children in the County of Ulster, State of New York.

4.      Plaintiff Jerrold Rosen is the Father of A.R. and D.R. and resides with his two minor sons in the County of Orange, State of New York.

5.      At all times relevant to this action, the Defendant Pine Bush Central School District (hereinafter referred to as PBCSD) was and is an entity residing at 156 Route 302, Pine Bush, County of Orange, State of New York.

## FACTUAL ALLEGATIONS

6.      This is an action for anti-Semitic discrimination, harassment, and bullying in the Pine Bush Central School District that has affected multiple children (the Plaintiffs), over many years, at different schools located with the Pine Bush Central School District that has caused physical, psychological, mental, and emotional damages to the Plaintiffs.

**A.      PLAINTIFF T.E.**

7.      On the date of October 8, 2008, while Plaintiff T.E. was in the fifth grade at Pine Bush Elementary School, there was a school field trip to visit the Statue of Liberty, Ellis Island and the Liberty Science Museum.  This trip was scheduled for the day before Yom Kippur, and the children would not return until after sundown.  The holiday of Yom Kippur started at sundown which meant that Plaintiff T.E., who is Jewish, would be unable to attend the school trip. Once notified of this issue, Plaintiff's mother Sherri Eccleston spoke with Mr. Fisch, the Principal of Pine Bush Elementary School, to voice her concerns and see if there was another date when

Plaintiff T.E. could attend the trip. There were no subsequent dates offered for this school trip. Plaintiff T.E. was devastated that she had to miss this fun school trip in which all of her friends were attending.

8.     In addition to not being able to attend the school trip with the rest of her classmates, many of Plaintiff T.E.'s subsequent school assignments were based upon the school trip that she was unable to attend. For approximately one week after the school trip, a majority of the school lessons were based upon that school trip. As Plaintiff T.E. has always been an exemplary student, the fact that she could not actively participate in these lessons left her feeling distraught.

9.     Plaintiff T.E. informed her teacher that she was unable to attend the field trip because of her religion. Her teacher did not provide her with any additional study materials to review regarding Ellis Island and the other locations in order to allow her to complete her assignments adequately; which frustrated T.E. to an enormous level.

10.     On or about and between the 10th day of October, 2008, and the 1st day of June 2009, Plaintiff T.E. was in her home-room class at Pine Bush Elementary School, sitting next to two other students. She witnessed these two students, K.L. and N.B., drawing swastikas in their planners. Plaintiff T.E. was appalled by this behavior. When she arrived home that evening, Plaintiff T.E. spoke to her mother about what she had seen these students draw on their planners. Ms. Eccleston was especially concerned because one of the students was the son of the school Psychologist, Dr. Laura Bush. The next day, Ms. Eccleston drove Plaintiff T.E. to school and had a meeting with Mr. Fisch, the Principal, to speak to him about what Plaintiff T.E. had observed these two students draw. The Principal acted indifferent and did not think that the two students' drawing swastikas in their

planners was something to be concerned about. No appropriate action was taken. Ms. Eccleston also reported the incident to the DARE Officer, Police Officer James Johnson of the Town of Crawford Police Department. No action was taken.

11.     One month after the above stated incident took place, Plaintiff T.E. was riding the school bus home when the same student K.L., who she had seen draw a swastika on his planner made eye contact with her and called her "a Jew" in a demeaning tone. This left her feeling scared. When she got off of the bus, Plaintiff T.E. and her mother looked up and saw this same student give them the middle finger, which insulted and upset both of them. Ms. Eccleston reported this incident to the school bus driver, Art Champion, and to the school bus company. Ms. Eccleston asked the bus driver to personally report the incident, which she believes he did. There was no action taken by the school district or the bus company, a violation of the PBCD Student Code of Conduct.

12.     During the Spring of Plaintiff T.E.'s 5th grade school year at Pine Bush Elementary School, on or about and between the 21st day of March, 2009 and the 1st day of May, 2009, Plaintiff T.E. saw a swastika engraved on the playground slide at the school, which caused her great emotional distress. The next school day, Ms. Eccleston reported to the Principal that there was a swastika on the slide, and reminded him of all of the prior anti-Semitic incidents that T.E. had witnessed. The Principal did not have the swastika removed. Ms. Eccleston also reported the swastika being engraved on the slide to the Superintendent of the Pine Bush School District, Mr. Steinberg, and informed him of all of the prior incidents listed above. The swastika on the slide was not removed before the end of the school year despite the actual notice that the school had of its presence for months.

13.    On or about the 1ˢᵗ day of September, 2009, Plaintiff T.E. began attending Crispell Middle School, part of the Pine Bush Central School District, where she rode a school bus that contained students from both Crispell Middle School and Pine Bush High School. During the school bus rides to and from school, one of the high school students who rode the bus with Plaintiff T.E. routinely commented about white power and Hitler on a daily basis; causing her great distress and fear about what he would do to her if he found out that she was Jewish.

14.    On April 19, 2010, this same high school student and a couple of the other students on the bus talked about celebrating Hitler's birthday the following day; again causing Plaintiff T.E. great distress.   After being informed of this conversation by Plaintiff T.E., Ms. Eccleston immediately called the Superintendent, Mr. Steinberg, who was unavailable to speak with her. Ms. Eccleston instead spoke with Deborah June, the Superintendent's secretary, and told her that Plaintiff T.E. reported that the kids on the school bus were planning on doing something the following day for Hitler's birthday. Ms. June responded to Ms. Eccleston: "How do they even know that T.E. is Jewish?" showing a complete indifference to the serious situation. The students were clearly threatening Jewish students, a violation of the PBCSD Code of Conduct.   No action or investigation was taken for the student's violation. Plaintiff T.E. did not attend school the following morning as she was petrified of what the other students might do to her.

15.    Ms. Eccleston drove her daughter to Pine Bush Elementary School that evening and discovered that the swastika was still engraved on the slide after having been reported to the school Principal and Superintendent more than one year before that date. She informed Deborah Brush, the assistant Superintendent in charge of business, that there was still a swastika engraved on the slide at Pine Bush Elementary School who finally had it removed.  Ms. Ecclestion also informed Ms.

Brush that some of the students were planning to do something for Hitler's birthday. Ms. Brush sent notices out to the bus company and the schools advising them to watch for such behavior, however, no disciplinary or remedial action was taken.

16.     On or about the 21st day of April, 2010 Plaintiff T.E. returned to school. When she got on the school bus that morning, the bus driver made her sit in the front seat of the bus. When the bus arrived at Crispell Middle School, the bus driver yelled at Plaintiff T.E. and stated that she had lied about the conversation regarding the other students celebrating Hitler's birthday, and was making it up. The bus driver continued to yell at Plaintiff T.E. and berate her in front of the other kids until Plaintiff T.E. began to cry, at which point the driver yelled at Plaintiff T.E. for crying. The school bus driver attempted to take Plaintiff T.E.'s phone away from her when she sent her mother a text message regarding the incident; which Plaintiff T.E. refused to allow the bus driver to do. Plaintiff T.E. was completely traumatized by the incident, and extremely embarrassed that her peers saw her crying. Ms. Eccleston immediately called Ms. DeGong, the manager of the bus company, to report the incident that had occurred between Plaintiff T.E. and the bus driver. Ms. DeGong arranged for a three-way phone conference three days later between Ms. DeGong, the bus driver, and Ms. Eccleston. During this conversation, the bus driver continued to call Plaintiff T.E. a liar. Plaintiff was appalled. After this incident, Ms. Eccleston drove T.E. to school when she was able to because T.E. was afraid to ride the school bus.

17.     While in the sixth grade, Plaintiff T.E. also witnessed a student named, M.K. point his hand like a gun at Plaintiff O.C.. It was reported to the teacher, Ms. Coffey. He was written up, and no further action was taken.

18.     Another instance in the sixth grade, the class was on a field trip at Mamakating Town Park. Plaintiff T.E. witnessed a student named M.C. was making fun of Plaintiff O.C. for being Jewish and threw sand at her. Plaintiff O.C.'s friend E.W. defended her and the boys engaged in a physical altercation at the Park. Plaintiff was terrified.

19.     When Plaintiff T.E. was in the seventh grade, during math class, a student named, D.B., constructed a Hasidic Jew he made out of pipe cleaners. Then another day at lunch, a student C.L., made a swastika out of pipe cleaners and told her that he was going to give to O.C.. Once Plaintiff O.C. found out she began to yell at him for what he made. The Vice Principal, Mr. Winter, witnessed the incident. C.L. received in school suspension.

20.     On or about and between the first day of January, 2011 and the 31st day of January, 2011, Plaintiff T.E. was in English class at Crispell Middle School. While in class, another student, C.O., told Plaintiff T.E. that she should be burned, which caused Plaintiff T.E. great distress. This statement was made while the students were learning about the Holocaust and was threatening behavior, a violation of the PBSCD Student Code of Conduct. No action was taken for this threatening remark.

21.     On or about the 11th day of April, 2011, while in study hall at Crispell Middle School, another student, S.G., called Plaintiff T.E. "a Jew" in an insulting manner, said that she should be burned, and called her "crispy"; all of which caused Plaintiff T.E. great anguish. In response, Plaintiff T.E. and her mother reported this incident to the Vice Principal, Eric Winter. S.G.'s remark is a violation of the Pine Bush Student Code of Conduct, and no remedial action was

taken.  Ms. Eccleston reported to Mr. Winter that "Jew" was being used as a curse word in the

hallways and explained how offensive this was to Plaintiff T.E..  Ms. Eccleston reported to Mr.

Winter that the anti-Semitic behavior was constant, but no action was taken.

22.     On or about the 27th day of April, 2011, Plaintiff T.E. was in Spanish class at Crispell

Middle School when she heard a student, B.B., making fun Jewish people, which she reported to the

Vice Principal, Eric Winter.  She was extremely insulted by what was said by this student about

people of her religion.  No action was taken for this disruptive and offensive behavior in class, a

violation of the school district own rules and procedures.

23.     On or about April 28, 2011, Plaintiff T.E. was in Math class at Crispell

Middle School and witnessed a conversation that took place between two students, where one

student, D.B., said that he did not know what to do about something and the other student, D.I.,

responded that it was because he was a Jew.  Neither student is Jewish, the term Jew is thrown

around as a derogatory remark in the school.  This offended Plaintiff T.E. and she reported this

incident to the Vice Principal, Eric Winter.  No action was taken for this disruptive behavior, a

violation of the PBCSD Student of Code of Conduct.

24.     On or about the 25th day of May, 2011 Plaintiff T.E. was riding the school bus home

from Crispell Middle School.  While on the bus, another student, T.D., had a picture of a Hasidic

Jewish man drawn in ink on his stomach.  This student lifted his shirt so that the picture was

exposed.  Another student said: "Let's throw pennies in his mouth," which upset Plaintiff T.E..

Plaintiff T.E. reported the incident to her mother via a text message.  Ms. Eccleston met Plaintiff

T.E. at the school bus and reported the incident to the bus driver.  Ms. Eccleston went to the Town

of Crawford Police Department and reported the incident to Sergeant Eric Meir.  Ms. Eccleston

reported the numerous anti-Semitic incidents that had occurred at Plaintiff T.E.'s school and on the bus, and conveyed her frustration with this anti-Semitic behavior. Sergeant Meir was also on the Pine Bush Central School District School Board. In response to advice given to her from Sergeant Meir, Ms. Eccleston also reported all of these incidents to Lloyd Greer, another member of the Pine Bush Central School District School Board. There was no remedial action taken by the school board.

25.     On or about the 31st day of May, 2011, Plaintiff T.E. was riding the school bus home from Crispell Middle School, when the student who had previously commented about White power sat with Plaintiff T.E. on the bus. Plaintiff T.E. asked to move her seat and this student refused to move in order to allow Plaintiff T.E. to get out of the seat. Plaintiff T.E. sent her mother a text message expressing her fear of this student sitting next to her. Ms. Eccleston called the Vice Principal and reported the incident to him. The bus company was notified of the situation, and the bus company then notified the bus driver over the radio transmission about everything that had occurred; causing every student in the front of the bus to hear the conversation. The radio conveyed that Ms. Eccleston had called the school and did not want Plaintiff T.E. sitting next to this student on the bus. The bus driver then conveyed all of this to Plaintiff T.E., loudly, in the presence of all of the other students; which was extremely embarrassing. The bus company's response made the situation much worse than it had been. The driver then moved T.E. to another seat. The student who had been sitting next to T.E. and another student began commenting about T.E. telling her mother everything. The student said that T.E. would get beaten up when she attended the eighth grade. The student threatened to commit a violent act against Plaintiff, it was made in the presence of a school official, and no remedial action was taken against the student or the employees, a violation of the school's own procedures.

26.     Ms. Eccleston notified Vice Principal of the lack of discretion from the bus company
and informed him that Plaintiff T.E. was being threatened and was not comfortable riding on the
school bus to get to and from school due to all of the anti-Semitic behavior experienced by Plaintiff
T.E. from the other students.  The threatening violent behavior went unpunished even though it was
reported, a violation of the PBCSD Student Code of Conduct.  Ms. Eccleston asked if the school
would provide another mode of transportation for Plaintiff T.E. to get to and from the school to make
her daughter feel safe.  She was told that it was not the School's responsibility to provide her with
this additional mode of transportation.

27.     Plaintiff T.E. does not feel safe riding the school bus and has not done so since this
incident occurred.

28.     On or about the 7th day of June, 2011, Ms. Eccleston met with Mr. Cohen, Mr.
Steinberg the Superintendent, James Johnson, and Lloyd Greer a member of the school board, and
reported all of the incidents previously discussed above.  No action was taken after the meeting.

29.     On or about the December 12, 2011, Plaintiff T.E. was severely beaten
in gym class.  Her hand was swollen and severely bruised.  Her thumb was fractured.

30.     In gym class, Plaintiff T.E. was playing hockey.  Her team was winning.  two other
students, D.R. and J.G. starting getting mad that her team was winning.  They began calling her
names like stupid, annoying and retarded.  Then a student named, D.R., started hitting Plaintiff T.E.
in the hand and the ankle with the hockey stick instead of the ball.  A second student, J.G., lifted her
stick and told Plaintiff T.E. that she was going to hit her in the face with it.  Plaintiff T.E. responded
by telling her if she did, she would  punch her in the f*cking face.  Mrs. Giuliani walked over to
Plaintiff T.E. Eccleston at the bleachers and yelled at her for what she said to J.G.  Plaintiff T.E. told

the teacher that "you will yell at me for saying that, but you aren't yelling at them for what they are

saying and for hitting me". She turned and walked away. The teacher took no action. The students

that beat the Plaintiff were not disciplined.

31.     When Plaintiff T.E. was sitting in the bleachers, J.G. and D.R., kept pushing her into

people. So after class Plaintiff T.E. went to talk to Mr. Callo , the guidance counselor, with her

friend S.W.  Mr. Callo told Plaintiff T.E. to go to class.

32.     Immediately after Plaintiff T.E. arrived home, she showed her mother

her hand and foot, and told her it hurt really bad. Ms. Eccleston took her to Urgent Care.  On the

way to Urgent Care, Ms. Eccleston called Mr. Mummery, the Assistant Principal, to tell him what

happened. At Urgent Care, they took X-Rays of the hand and ankle. After they arrived home, the

Doctor phoned and told them that Plaintiff T.E.'s thumb was fractured.

33.     On Saturday, Plaintiff T.E. was in pain. Her hand was really swollen.

Saturday afternoon, at the Town Tree lighting, Ms. Eccleston showed a female ambulance worker,

who said it didn't look good, and that she should get it looked at. Ms. Eccleston took Plaintiff T.E.

to the hospital, and they put a new bandage on. After the hospital they went to the police department

to make a report. Officer Levison said he would look into it and talk to the school.

34.     On Monday, Ms. Eccleston took Plaintiff T.E. to school and told Mr.

Mummery what happened. He promised to look into it. Plaintiff T.E. went to the Doctor at noon

that day. The Doctor said her hand probably had a bruised bone and that her thumb was fractured.

Plaintiff T.E. received a cast and was told to follow up over the winter break.

35.    On Tuesday, Plaintiff T.E. went to Career Day and to Math class . Mr. Mummery took her out of class and asked why she didn't go to the nurse. Plaintiff T.E. replied that it just hurt. She was told to go to class.  Later on he brought in D.R., and she told him that Plaintiff T.E. hit her. Plaintiff T.E. asked that "if I hit her why didn't she report it and why wasn't there any marks on her". D.R. said she wouldn't apologize for hitting and that maybe "I slammed my hand into a locker to frame her".  Plaintiff T.E. and D.R. were bickering back and forth over what happened.  Mr. Mummery told D.R. to leave.  He told Plaintiff T.E. nothing was going to be done because "he thought it was both of us".  There were witnesses that saw it happen.  No action was taken for the attack on Plaintiff T.E., even though there were witnesses and a police report was made of the incident.

36.    On or about January 23, 2012, in health class, M.S., told an anti-Semitic joke in front of Plaintiff T.E. about Jews and Boy Scouts involving Camp.  Plaintiff was appalled and offended by their jokes.

37.    On January 24, 2012, John Boyle, the Principal, called Plaintiff T.E. Eccleston into his office because her mother had called regarding the joke, and the there was a swastika in the girls bathroom. Plaintiff T.E. told Mr. Boyle exactly where it was located. Mr. Boyle told Ms. Eccleston, it was not there when he went to check on it later that day.  The swastika was still there on the bathroom stall when she went back to school the next day. Plaintiff O.C. got tired of it and cleaned it off.

38.     On January 24, 2012 that same day, in math class during the school mid-term exam,

B.G. and A.F., two students were doing Hitler salutes.  Plaintiff was extremely offended and felt

threatened.  No action was taken for this class disruption, a violation of the PBCSD Student Code

of Conduct.

39.     On or about January 25, 2012, B.G., threw a dime at Plaintiff T.E. and hit her with

it.  Plaintiff T.E. was so upset she texted her mother that if she had to go back to school she would

have a nervous breakdown.  Ms. Eccleston called the Mobile Mental Health Group, and spoke with

women who advised that this was an unhealthy environment for Plaintiff T.E. to be in.  This was

Plaintiff T.E.'s last day at Crispell Middle School. She is now being home schooled. Ms. Eccleston

reported the incident to the Town of Crawford Police Department.

40.     In Pine Bush Elementary School and Crispell, Plaintiff T.E. has viewed anti-Semitic

drawings and swastikas engraved all over school property, on the walls of the girls' bathrooms and

stalls, textbooks, on the playground, school desks, the hallways.  It seemed to be everywhere she

looked.  It was seen on daily basis and in several locations, which nauseated her.  The swastikas and

other forms of anti-Semitic drawings and cravings were reported repeatedly on multiple occasions,

which has gone on for years with minimal remedial action by the school district to remove them.

41.     One occasion in particular, Plaintiff T.E., viewed a swastika engraved on her desk in

her music classroom, which caused her great distress.  The school did not remove the swastika from

her desk for over two weeks.

42.     Ms. Eccleston has met numerous times with the Superintendent of PBCSD, the Vice

Principal, the Principal, school bus drivers and their supervisors, Police Officers and various

members of the school board.  She reported to them all of the horrendous anti-Semitic incidents

experienced by her daughter, previously discussed above, on numerous occasions. Nothing was done by the school faculty and staff to remedy the pervasive problem of anti-Semitism in their schools, such as disciplining the students involved in this behavior, holding assemblies addressing the issue of anti-Semitism, providing counseling for Plaintiff T.E. and for those students showing anti-Semitic behavior, enrolling the students lashing out at Plaintiff T.E. in anti-bullying programs, providing safety plans for Plaintiff T.E., and providing additional supervision of their students.

43.     Plaintiff T.E. has experienced extreme stress resulting from the constant bullying in her school due to her being of the Jewish faith. Plaintiff T.E.'s focus on bullying and threats consume her every thought. Her grades have dropped significantly. She was attacked and beaten. Ms. Eccleston had to remove her daughter from attending the Pine Bush School District due to the hostile education environment. Ms. Eccleston has seen Plaintiff T.E. withdraw from friendships. Plaintiff T.E. will not do anything that involved going into the town of Pine Bush. Plaintiff T.E. no longer wants to participate in any school sports. She has been completely devastated by all of the anti-Semitic behavior that her classmates have shown towards her, and the school condones the behavior. She has suffered physical injury and permanent psychological and emotional injury.

**B.     PLAINTIFF O.C.**

44.     Plaintiff O.C. has seen swastikas drawn on numerous occasions inside of other students' textbooks in her classes, which has caused her great emotional distress. No action was ever taken to remove the swastikas from the textbooks even though it was reported to the school.

45.     Plaintiff O.C. has seen swastikas drawn many times and in several locations inside of the girls' bathrooms at school. She has reported these swastikas to school officials, and it took them several months to remove the swastikas.

46.     Plaintiff O.C. witnessed another student, J.B., coming out of a classroom holding her hand over her face. She saw that there had been a swastika drawn on J.B.'s face. J.B. stated that one student, C.N., held her hands behind her back while another student, K.C., drew the swastika on her face.

47.     Plaintiff O.C. slapped C.N. because she was so furious with his outrageous behavior. She was sent to the Principal's office because of this. The Principal, John Boyle, asked Plaintiff: "Why would you take offense to that when it was not directed at you?" which further enraged Plaintiff O.C. that the school did not see that it was extremely wrong and offensive to all Jewish students what these two students had done to J.B. The school never called J.B.'s parents to inform them of what happened. Ms. Eccleston eventually told J.B.'s father what happened at school to his daughter. These two students are considered violent students as defined in the PBCSD Student Code of Conduct. No appropriate action was taken.

48.     When Plaintiff O.C. was in the sixth grade, one of the other students knocked on her best friend's door and asked if there was a "Jew" there; referring to O.C.. When O.C. found out what happened she became very upset and distressed.

49.     Plaintiff O.C. was called a "christ killer" by another student in one of her classes. No action was taken to discipline this student, a violation of PBCDS Student Code of Conduct.

50.     Another instance in the sixth grade, the class was on a field trip at Mamakating Town Park. M.C. was making fun of Plaintiff O.C. for being Jewish and pick up a penny and said "look I'm a Jew" and threw sand at her. Plaintiff O.C.'s friend E.W. defended her and the boys engaged in a physical altercation at the Park. Plaintiff O.C. was terrified.

51.     Plaintiff O.C. overheard a conversation on the school bus where other students were making fun of the Holocaust and said that she should be burned. This devastated and terrified Plaintiff O.C.. She told the bus driver who did nothing. The bus driver said "she would listen for it next time". No action was taken against the Students for their violation of the PBSCD Student Code of Conduct. No action was taken against the Bus Driver.

52.     Plaintiff O.C. was called a "stupid Jew" time and time again by the other students in her classes, which upset her greatly. She reported this behavior. No action was taken, a violation of the PBCSD Student Code of Conduct.

53.     Plaintiff O.C. was called a "Jesus hater" in school by S.G., which led to a verbal fight in school between Plaintiff O.C. and the student that said these words. No action was taken, a violation of the PBCSD Student Code of Conduct.

54.     While in the sixth grade, they were watching a video about the Holocaust, one of the students, M.K., in the classroom looked at Plaintiff O.C., made his hand look like the shape of a gun, and stated: "Look, I'm killing Jews." Plaintiff was afraid. Plaintiff O.C. reported this incident to her teacher, Ms. Coffey. The student was written up. No further action was taken.

55.     When she was in the seventh grade, Plaintiff O.C. was called a "dirty disgusting Jew" by one of her fellow classmates, I.D. This started a screaming match in the hallway between Plaintiff O.C. and I.D. They both went to the Vice Principal's office who let them talk it

out. I.D. just wanted to leave so she apologized. No action was taken for this disruptive and offensive behavior. On several other occasions the students would say: "You're such a stupid Jew!" and no action was taken.

56.     In seventh grade English class, there was a swastika drawn on Plaintiff O.C.'s desk, and she reported to Mr. Winter the Assistant Principal who got rid of it. Approximately a week later, there was another one on her desk, again she reported it and Mr. Winter got rid of it, but it repeated for several weeks. At one point there were three swastikas on her desk and written inside on of them said "O.C.'s a Jew". Plaintiff was appalled and afraid. No appropriate action was taken, a violation of the PBCDS Student Code of Conduct.

57.     That same year, someone drew a swastika in Plaintiff O.C.'s friend, C.M.'s year book next to her picture. When she saw it, Plaintiff O.C. was appalled, scared, and offended. The yearbook was give to Mr. Winter, who blocked out the swastika from the yearbook.

58.     C.L. made a swastika out of a green and red piper cleaner and showed it to her friends. He told Plaintiff T.E. he was going to give it to her but before he could she starting yelling at him for this. Mr. Winter witnessed the situation, and C.L. received in school suspension.

59.     On the 14th day of April, 2011, Plaintiff O.C. observed another student drawing a swastika on a desk during science class, which distressed her immensely. No action was taken, a violation of the PBCSD Student Code of Conduct.

60.     Plaintiff O.C. heard a student tell to another student about Plaintiff O.C. that they should "stab her with a menorah and sink her with a cross." This caused Plaintiff O.C. to became terrified of what the other students might do to her. No action was taken.

61.     At lunch time another student, K.R., told Plaintiff O.C.'s friends she should "go back to pick up pennies from the street" referring to O.C.  When Plaintiff O.C. friends told her Plaintiff O.C. was appalled.  No action was taken, a violation of the PBCSD Student Code of Conduct.

62.     A student always had Nazi signs drawn on his binder and told Plaintiff O.C. during their Spanish class that he was Hitler to instill fear in her, which he succeeded at doing.

63.     On or about and between the first day of September, 2010 and the 31st day of October, 2010 at recess, one of the male students, C.V., attempted to shove a quarter in Plaintiff O.C.'s mouth. His twin brother, J.V. held Plaintiff O.C. arms down so she couldn't move. Plaintiff O.C. was able to break free and punched C.V. in the chest in order to stop him.  No action was taken, a violation of the PBCSD Student Code of Conduct.

64.     When in the eighth grade, there was a poster of President Obama in her Social Studies class and someone drew a swastika on it.  Plaintiff O.C. reported it to the teacher, Mrs. Hennessy three times, and nothing was done about it.  When the teacher left for maternity leave, Plaintiff O.C. reported it to the substitute teacher who did nothing about it either.  Plaintiff O.C. then reported it to Mr. Mummery the Assistant Principle who finally fixed it.  The swastika was on the poster for over a month.

65.     In January 2012, there was a swastika in the bathroom stall that said "for any Jew who wants it".  Plaintiff O.C. reported this to Mr. Mummery.  Plaintiff T.E. also reported to him at least two to three times.  It was not taken down.  Plaintiff O.C. got tired of looking at it and erased it herself on January 24, 2012.

66.     Many students would tell Plaintiff O.C. that she had "stupid Jew curls" which caused her to feel self-conscious about how she looked.  In March 2012, J.G. made fun of O.C. by curling her hair and saying it's Plaintiff O.C.

67.     As a direct result of the constant harassment and bullying experienced by Plaintiff O.C. on a daily basis in the PBCSD, Plaintiff O.C. has become severely distracted during school hours and cannot focus on her classes.  She does not participate in extracurricular activities because she is constantly afraid as she is always being made fun of and threatened for being of the Jewish faith.  The intimidation, name calling, threats,  and verbal and physical assaults, have cause her to be socially isolated and in fear of her peers at school, and her grades have dropped dramatically, when they used to be outstanding.  Plaintiff O.C. was failing her classes, which she has never done before in the past.

68.     These horrendous anti-Semitic behaviors shown by other students towards Plaintiff O.C.s in the PBCSD were never addressed by the faculty and staff of the school and continue to occur to this day.  They have caused physical injury as well as permanent psychological and emotional harm to Plaintiff O.C.

## C.     PLAINTIFF D.C.

69.     Plaintiff D.C., had change thrown at him everyday from sixth to ninth grades.  No action was taken, a violation of the PBCSD Student Code of Conduct.

70.     In the eighth grade, students would sing songs of killing "Niggers" and "Jews". They would take his belongings out of his back pack and throw them on the ground because he was "Jewish" which continued through the ninth grade.

71.     During the sixth grade through the eighth grade, students threw change into garbage receptacles and tell him to go get it, which caused him anxiety and fear when at school. No action taken, a violation of the PBCSD Student Code of Conduct.

72.     During the sixth through ninth grades, students would threaten to burn him in the oven, which caused him anxiety, fear and gravely upset Plaintiff D.C.. No action was taken, a violation of the PBCDS Student Code of Conduct.

73.     When Plaintiff D.C. was in the ninth grade, a senior slapped him in the face frequently as he got off the bus calling him a Kike all of that year. No action was taken, a violation of the PBCDS Student Code of Conduct.

74.     Plaintiff D.C. was repeatedly called "Ashes" during the ninth grade. No action was taken, a violation of the PBCDS Student Code of Conduct.

75.     In the tenth grade, multiple students in his math class were bullying other Jewish students. The teacher, Ms. King, heard them and saw them. Ms. King did nothing over his objections to this behavior. This occurred on a regular basis in her classroom. No action was taken, a violation of the PBCDS Student Code of Conduct.

76.     As a direct result of the constant anti-Semitic harassment and bullying experienced by Plaintiff D.C. on a daily basis in the PBCSD, Plaintiff D.C. has been caused immense stress, anxiety, and fear of attending school as he is afraid of what his peers might do to him. Plaintiff D.C. has become socially isolated, and does not participate in extracurricular activities for fear of being bullied by his peers. He has suffered physical injury as well as permanent psychological and emotional harm.

**D.    PLAINTIFF A.R.**

77.    In the seventh grade at Crispell Middle School, students in Plaintiff A.R.'s class would yell out anti-Semitic comments such as "stupid Jew". There were swastika's carved or drawn on a desk or wall all year. Plaintiff A.R. had pennies and other coins thrown at him in the seventh grade. Many of the anti-Semitic incidents took place in the cafeteria at school and were witnessed by the teachers and staff who took no action, a violation of the PBCSD Student Code of Conduct.

78.    In the eighth grade at Crispell Middle School, during lunch time Plaintiff A.R. was pelted with spare change, hordes of students would sit on the bench and pester him and his friends for some change, implying that a Jew such as himself would have indefinitely deep pockets full of quarters. They would call him a "stupid Jew" if he did not give them any change. Another time in the cafeteria, a student put a piece of tin foil on their head and said "I have a yarmulka, I am a Jew just like you". The incidents in the cafeteria would happen right under the teacher's noses, but they took no action. A violation of the PBCSD Student Code of Conduct.

79.    During that year in eighth grade, it seemed everywhere he looked there would be a swastika carved onto a wall or a desk, in the bathrooms, textbooks, and sometimes drawn on a piece of paper and passed around the classroom as a note. A violation of the PBCSD Student Code of Conduct.

80.    Halfway through the year, a student walked up to him at lunch time and went to punch him in the face, but Plaintiff A.R. was able to stop him. Plaintiff A.R. fought back. This student was provoking him because he is Jewish. They were both suspended.

81.    Another time, a student approached him and asked him if he was Jewish.  The student immediately told a joke "What is the difference between a Jew and a pizza?....One doesn't scream as it gets put in the oven."  The other student grabbed a history book, and flipped to a page of September 11th, then said it was his fault that it happened.  Plaintiff A.R. told the Principal, the student was punished with in school suspension and was told to write an apology note.  It was never received.

82.    Plaintiff A.R.'s father met with the Vice Principal of Crispell Middle School on more than one occasion regarding the anti-Semitic bullying of his two sons, A.R. and D.R..  Plaintiff's father specifically asked if there were any other students experiencing anti-Semitism at the school.  He was told that there were no similar incidents reported by other students.

83.    Plaintiff A.R.'s father removed A.R. from the school for almost a year due to the harassment, bullying, name calling, threats,  assaults, and intimidation by  by his peers due to him being Jewish and the inaction of the school administration to condemn the anti-Semitic behavior that was prevalent throughout the school and student body.

84.    Since Plaintiff A.R. has returned Pine Bush High school, Plaintiff A.R. has seen swastikas written in marker on the bathroom wall and on the bleachers in the gym, which has upset and offended him.

85.    As a direct result of the constant anti-Semitic harassment and bullying experienced by Plaintiff A.R. on a daily basis in the PBCSD, Plaintiff A.R. has been caused immense stress, anxiety, and fear of attending school as he is afraid of what his peers might do to him. Plaintiff A.R.

has become socially isolated, and does not participate in extracurricular activities for fear of being bullied by his peers. His grades are suffering. He has suffered physical injury as well as permanent psychological and emotional harm.

## E.   PLAINTIFF D.R.

86.    In 2008, during the first week of the sixth grade at Crispell Middle School, Plaintiff D.R. was asked if he was Jewish between fifteen to twenty times, which upset him and caused anxiety when he was at school.

87.    In the first week of October 2008, in the cafeteria students would ask him if he had "Jew gold". He didn't know how to respond.

88.    In the third week of October 2008, about twenty or so students threw change at him in the cafeteria, which gravely upset him and has cause him fear and anxiety while at school. Plaintiff D.R. reported the anti-Semitic incidents to the lunchroom monitors, guidance office, and the Vice Principal, Robert Peters. No action was taken.

89.    In the second week of November 2008, Plaintiff D.R. filed a report and an announcement was made on the loud speaker that said that harsh action will be taken against any student caught discriminating against another student. He was left alone for about a month and then the bullying started all over again.

90.    In December 2008, Plaintiff D.R. went on a ski trip with the school to Belleayre Mountain. On the way home, an 8th grader asked him if he was Jewish. He replied yes. After that the next fifteen minutes were spent with kids randomly slapping the back of his head. More kids proceeded to hit him, curse at him, throw change and other items across the bus at him. A report was

made against the kid who started it. He had to write an apology. No appropriate or remedial action was taken against the aggressors.

91.    In January 2009, other students would call him a "stupid Jew". Money was thrown more frequently, except this time they would aim directly for him. Swastikas were everywhere in the school, in the bathrooms, the cafeteria, textbooks, desks in the classroom. Several reports were filed with the school administration for that month. No action was taken, a violation of the PBCSD Student Code of Conduct.

92.    Plaintiff D.R.'s father met with the Vice Principal of Crispell Middle School on more than one occasion regarding the anti-Semitic bullying of his two sons, A.R. and D.R. Plaintiff D.R.'s father specifically asked if there were any other students experiencing anti-Semitism at the school. He was told that there were no similar incidents reported by other students. No action was taken and the incidents continue.

93.    As a direct result of the constant anti-Semitic harassment and bullying experienced by Plaintiff D.R. on a daily basis, Plaintiff D.R. has been caused immense stress, anxiety and fear of attending school because he is afraid what his peers might do to him. Plaintiff D.R. no longer participates in after school activities. Plaintiff D.R. quit the track team. He has suffered physical injury as well as permanent psychological and emotional harm.

## AS AND FOR A FIRST CLAIM
(against PBCSD in violation of Plaintiff T.E. 's rights
under Title VI of the Civil Rights Act of 1964)

94.    Plaintiff T.E. repeats and realleges paragraphs 1 through 93 as if fully stated herein.

95.    Plaintiff T.E. has a protected right to be free from discrimination and harassment under Title VI of the Civil Rights Act of 1964.

96.     While a student in the Pine Bush Central School District, Plaintiff T.E., was subjected to daily discrimination, harassment, and bullying from other students at her school due to her being Jewish.

97.     Defendant PBCSD had actual notice of the racial and religious hostility occurring at Crispell Middle School and the Pine Bush Central School District.  A number of the incidents were reported to the Principal, Vice Principal, teachers, faculty, and staff members of Crispell as well as bus drivers, the bus company, and Town of Crawford Police Department.   PBCSD failed to take remedial measures to prevent further discrimination of Plaintiff T.E. and other Jewish students allowing the behavior to continue and become permissible and acceptable throughout the school district.

98.     Defendant PBCSD acknowledged and was aware of this severe, pervasive, and disturbing behavior towards Plaintiff T.E., and acted with deliberate indifference towards this situation which resulted in harm to the Plaintiff.

99.     The environment was permeated with racial and religious hostility of such severity or pervasiveness so as to significantly alter the conditions of Plaintiff's educational environment resulting in physical attacks and injury and thereby deny her equal access to the school's resources and opportunities.

100.As a result of Defendant, PBCSD's violation of Plaintiff T.E.'s rights under Title VI of the Civil Rights Act of 1964, Plaintiff T.E. has suffered physical, emotional and psychological damages in an amount to be determined at trial, but in no event less than twenty five  million dollars ($25,000,000.00).

## AS AND FOR A SECOND CLAIM
(against PBCSD in violation of Plaintiff T.E.'s rights
under 42 U.S.C. §1983 a violation of Substantive Due Process)

101.    Plaintiff T.E. repeats and realleges paragraphs 1 through 100 as if fully stated herein.

102.    Defendant PBCSD violated Plaintiff T.E.'s substantive due process rights to equal protection under the 14th Amendment of the United States Constitution.  PBCSD allowed discriminatory practices and anti- Semitic behaviors and actions to become institutionalized and condoned which penalized Plaintiff T.E. for being of the Jewish religion, and subjected the Plaintiff T.E. to a constant barrage of harassment and bullying for being of the Jewish faith without any type of intervention or remediation.

103.    The Defendant's failure to take action to prevent the discrimination and harassment created or increased the danger to which the Plaintiff T.E. was exposed by their utter disregard and deliberate indifference towards the discipline students for their conduct.  The school district's inaction to prevent further harassment and bullying towards Jewish students gives rise to a policy that tolerate's discriminatory behavior and student on student harassment.

104.    The discriminating, harassing, and bullying behavior of the PBCSD students, and the deliberate indifference to the behavior by the Defendant, rose to the level of egregious conduct so brutal and offensive to human dignity as to shock the conscience.

105.    That by reason of the aforesaid occurrence, and Defendant's negligence and other conduct as alleged herein Plaintiff has been caused to suffer psychological, mental, emotional and physical injury.

106.   As a result of Defendant, PBCSD's violation of Plaintiff T.E.'s substantive due process rights under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff T.E. Eccelston has suffered physical, emotional and psychological damages in an amount to be determined at trial, but in no event less than twenty five million dollars ($25,000,000.00).

## AS AND FOR A THIRD CLAIM
### (against PBCSD for Breach of Duty to Protect T.E.)

107. Plaintiff T.E. repeats and realleges paragraphs 1 through 106 as if fully stated herein.

108.   Defendant PBCSD had a duty to protect Plaintiff T.E. from harm while she was in their care and custody at Crispell Middle School.

109.   Defendant PBCSD had actual notice of the ant-Semitic, violent, bullying behavior exhibited by numerous students at PBCSD towards Plaintiff T.E.. Fellow students subsequently broke Plaintiff T.E.'s hand during her gym class after severely beating her and antagonizing her during the class, in full view of the teacher.  The students' behavior was the proximate cause of Plaintiff T.E.'s physical injury, and has caused mental anguish and distress.

110.   PBCSD had actual notice of violent and harassing behavior on the part of various students in their school district towards Plaintiff T.E. on numerous occasions prior to this attack.  This actual notice on the part of the school gave rise to a duty to protect Plaintiff T.E. from this violent and harassing bullying.  PBCSD violated this duty.

111.   School authorities had sufficiently specific knowledge or notice of dangerous conduct that eventually led to the causation of Plaintiff T.E.'s injury; that is, that these third-party students' acts against Plaintiff could reasonably have been anticipated by PBCSD.  PBCSD knew or should have known that students had a history of violent and aggressive behavior towards

Plaintiff T.E. and the other Jewish students in the school, which posed a threat to the safety of all students of the Jewish faith that attended that school.

112.    As a result of Defendant PBCSD's breach of their duty to protect Plaintiff T.E. from the anti-Semitic violent behavior present in their school, Plaintiff T.E. has suffered physical, emotional and psychological damages in an amount to be determined at trial, but in no event less than twenty five million dollars ($25,000,000.00).

## AS AND FOR A FOURTH CLAIM
### (against PBCDS for Negligent Infliction of Emotional Distress)

113.    Plaintiff T.E. repeats and realleges paragraphs 1 through 112 as if fully stated herein.

114.    PBCDS has a duty to adequately supervise the students in their charge and to exercise care as *loco parentis* over the students in their custody and control.

115.    PBCSD had actual notice and had sufficient specific knowledge of the dangerous proclivities and anti-Semitic threats by students against Plaintiff T.E..

116.    PBCSD lack of interest or disregard to take remedial action to stop the anti-Semitic threats against Plaintiff T.E. created an environment which unreasonably endangers Plaintiff T.E.'s physical safety and caused her to fear for her physical  safety.

117.    As a result of Defendant PBCDS's failure to exercise a reasonable degree of care over Plaintiff T.E. in their failure to adequately supervise PBCDS students, train their employees, enforce their own policies, and protect Plaintiff T.E., Defendant Pine Bush Central School District acted in a negligent manner, foreseeably causing injury to Plaintiff T.E., which includes physical, emotional and psychological injury resulting in damages in an amount in the amount of twenty five million ($25,000,000) dollars.

## AS AND FOR A FIFTH CLAIM
(against PBCSD in violation of Plaintiff O.C.'s rights
under Title VI of the Civil Rights Act of 1964)

118.   Plaintiff O.C. repeats and realleges paragraphs 1 through 117 as if fully stated herein.

119.   Plaintiff O.C. has a protected right to be free from discrimination an and harassment under Title VI of the Civil Rights Act of 1964.

120.   While a student in the Pine Bush Central School District, Plaintiff O.C., was subjected to daily discrimination, harassment, and bullying from other students at her school due to her being Jewish.

121.   Defendant PBCSD had actual notice of the racial and religious hostility occurring at the Pine Bush Central School District.  PBCSD failed to take remedial measures to prevent further discrimination, harassment, and bullying of Plaintiff O.C. and other Jewish students allowing the behavior to continue and become permissible and acceptable throughout the school district.

122.   Defendant PBCSD acknowledged and was aware of this severe, pervasive, and disturbing behavior towards Plaintiff O.C., and acted with deliberate indifference towards this situation which resulted in  physical, emotional and psychological damages to the Plaintiff.

123.   The environment was permeated with racial and religious hostility of such severity or pervasiveness so as to significantly alter the conditions of Plaintiff's educational environment and thereby deny them equal access to the school's resources and opportunities.

124.    As a result of Defendant, PBCSD's breach of Plaintiff O.C.'s rights under Title VI of the Civil Rights Act of 1964, Plaintiff has suffered physical, emotional and psychological damages in an amount to be determined at trial, but in no event less than twenty five million dollars ($25,000,000.00).

### AS AND FOR A SIXTH CLAIM
(against PBCSD in violation of Plaintiff O.C.'s rights
under 42 U.S.C. §1983 a violation of Substantive Due Process)

125.    Plaintiff O.C. repeats and realleges paragraphs 1 through 124 as if fully stated herein.

126.    Defendant PBCSD violated Plaintiff O.C.'s substantive due process rights to equal protection under the 14th Amendment of the United States Constitution.  PBCSD allowed discriminatory practices and anti- Semitic behaviors and actions to become institutionalized which penalized Plaintiff O.C. for being of the Jewish religion, and subjected the Plaintiff O.C. to a constant barrage or harassment and bullying for being of the Jewish faith without any type of intervention or remediation.

127.    The Defendant's failure to take action to prevent the discrimination and harassment created or increased the danger to which the Plaintiff O.C. was exposed by their utter disregard and deliberate indifference towards the discipline students for their conduct.  The school district's inaction to prevent further harassment and bullying towards Jewish students gives rise to a policy that tolerates and condones discriminatory behavior and student on student harassment in violation of their own rules and procedures.

128.    The discriminating, harassing, and bullying behavior of the PBCSD students, and the deliberate indifference to the behavior by the Defendant, rose to the level of egregious conduct so brutal and offensive to human dignity as to shock the conscience.

129.   That by reason of the aforesaid occurrence, and Defendant's negligence and other conduct as alleged herein Plaintiff has been caused to suffer physical, emotional and psychological damages.

130.   As a result of Defendant, PBCSD's violation of Plaintiff O.C.'s substantive due process rights under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than twenty five million dollars ($25,000,000.00).

### AS AND FOR A SEVENTH CLAIM
(against PBCDS for Negligent Infliction of Emotional Distress)

131.   Plaintiff O.C. repeats and realleges paragraphs 1 through 130 as if fully stated herein.

132.   PBCDS has a duty to adequately supervise the students in their charge and to exercise care as *loco parentis* over the students in their custody and control.

133.   PBCSD had actual notice and had sufficient specific knowledge of the dangerous proclivities and anti-Semitic threats by students against Plaintiff O.C.

134.   PBCSD lack of interest or disregard to take remedial action to stop the anti-Semitic threats against Plaintiff O.C. created an environment which unreasonably endangers Plaintiff O.C.'s physical safety and caused her to fear for her physical safety.

135.   As a result of Defendant PBCDS's failure to exercise a reasonable degree of care over Plaintiff O.C. in their failure to adequately supervise PBCDS students, train their employees, enforce their own policies, and protect Plaintiff O.C., Defendant Pine Bush Central School District acted in a negligent manner, foreseeably causing injury to Plaintiff O.C., which includes physical, emotional and psychological injury resulting in damages in an amount in the amount of twenty five million ($25,000,000) dollars.

## AS AND FOR A EIGHTH CLAIM
(against PBCSD in violation of Plaintiff D.C.'s rights
under Title VI of the Civil Rights Act of 1964)

136.    Plaintiff D.C. repeats and realleges paragraphs 1 through 135 as if fully stated

herein.

137.    Plaintiff D.C. has a protected right to be free from discrimination and harassment

under Title VI of the Civil Rights Act of 1964.

138.    While a student in the Pine Bush Central School District, Plaintiff D.C.,

was subjected to daily discrimination, harassment, and bullying from other students at his school due

to him being Jewish.

139.    Defendant PBCSD had actual notice of the racial and religious hostility occurring at

the Pine Bush Central School District.  PBCSD failed to take remedial measures to prevent further

discrimination, harassment, and bullying of Plaintiff D.C. and other Jewish students allowing the

behavior to continue and become permissible and acceptable throughout the school district.

140.    Defendant PBCSD acknowledged and was aware of this severe, pervasive, and

disturbing behavior towards Plaintiff D.C., and acted with deliberate indifference towards this

situation which resulted in physical, emotional and psychological harm to the Plaintiff.

141.    The environment was permeated with racial and religious hostility of such severity

or pervasiveness so as to significantly alter the conditions of Plaintiff's educational environment and

thereby deny them equal access to the school's resources and opportunities.

142.   As a result of Defendant, PBCSD's breach of Plaintiff D.C.'s rights under Title VI of the Civil Rights Act of 1964, Plaintiff has suffered physical, emotional and psychological harm and been damaged in an amount to be determined at trial, but in no event less than twenty five million dollars ($25,000,000.00).

## AS AND FOR A NINTH CLAIM
(against PBCSD in violation of Plaintiff D.C.'s rights
under 42 U.S.C. §1983 a violation of Substantive Due Process)

143.   Plaintiff D.C. repeats and realleges paragraphs 1 through 142 as if fully stated herein.

144.   Defendant PBCSD violated Plaintiff D.C.'s substantive due process rights to equal protection under the 14th Amendment of the United States Constitution.  PBCSD allowed discriminatory practices and anti- Semitic behaviors and actions to become institutionalized and condoned which penalized Plaintiff D.C. for being of the Jewish religion, and subjected the Plaintiff D.C. to a constant barrage of harassment and bullying for being of the Jewish faith without any type of intervention or remediation.

145.   The Defendant's failure to take action to prevent the discrimination and harassment created or increased the danger to which the Plaintiff D.C. was exposed by their utter disregard and deliberate indifference towards the discipline of students for their conduct.  The school district's inaction to prevent further harassment and bullying of Jewish students  gives rise to a policy that tolerate's and condones discriminatory behavior and student on student harassment in violation of their own rules and procedures.

146.   The discriminating, harassing, and bullying behavior of the PBCSD students, and the deliberate indifference to the behavior by the Defendant, rose to the level of egregious conduct so brutal and offensive to human dignity as to shock the conscience.

147.   That by reason of the aforesaid occurrence, and Defendant's negligence and other conduct as alleged herein Plaintiff has been caused to suffer physical, emotional and psychological injury.

148.   As a result of Defendant, PBCSD's violation of Plaintiff D.C.'s substantive due process rights under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff has suffered physical, emotional and psychological injuries and has been damaged in an amount to be determined at trial, but in no event less than twenty five million dollars ($25,000,000.00).

## AS AND FOR A TENTH CLAIM
(against PBCDS for Negligent Infliction of Emotional Distress)

149.   Plaintiff D.C. repeats and realleges paragraphs 1 through 148 as if fully stated herein.

150.   PBCDS has a duty to adequately supervise the students in their charge and to exercise care as *loco parentis* over the students in their custody and control.

151.   PBCSD had actual notice and had sufficient specific knowledge of the dangerous proclivities and anti-Semitic threats by students against Plaintiff D.C..

152.   PBCSD lack of interest or disregard to take remedial action to stop the anti-Semitic threats against Plaintiff D.C. created an environment which unreasonably endangers Plaintiff D.C.'s physical safety and caused him to fear for his physical safety.

153.   As a result of Defendant PBCDS's failure to exercise a reasonable degree of care over Plaintiff D.C. in their failure to adequately supervise PBCDS students, train their employees, enforce their own policies, and protect Plaintiff D.C., Defendant Pine Bush Central School District acted in a negligent manner, foreseeably causing injury to Plaintiff D.C., which includes physical, emotional and psychological injury resulting in damages in an amount in the amount of twenty five million ($25,000,000) dollars.

## AS AND FOR A ELEVENTH CLAIM
(against PBCSD in violation of Plaintiff A.R.'s rights
under Title VI of the Civil Rights Act of 1964)

154.    Plaintiff A.R. repeats and realleges paragraphs 1 through 153 as if fully stated

herein.

155.    Plaintiff A.R. has a protected right to be free from discrimination and harassment

under Title VI of the Civil Rights Act of 1964.

156.    While a student in the Pine Bush Central School District, Plaintiff A.R., was

subjected to daily discrimination, harassment, and bullying from other students at his school due to

him being Jewish.

157.    Defendant PBCSD had actual notice of the racial and religious hostility occurring at

the Pine Bush Central School District.  PBCSD failed to take remedial measures to prevent further

discrimination, harassment, and bullying of Plaintiff A.R. and other Jewish students allowing the

behavior to continue and become permissible and acceptable throughout the school district.

158.    Defendant PBCSD acknowledged and was aware of this severe, pervasive, and

disturbing behavior towards Plaintiff A.R., and acted with deliberate indifference towards this

situation which resulted in physical and mental harm to the Plaintiff.

159.    The environment was permeated with racial and religious hostility of such severity

or pervasiveness so as to significantly alter the conditions of Plaintiff's educational environment and

thereby deny them equal access to the school's resources and opportunities.

160.   As a result of Defendant, PBCSD's breach of Plaintiff A.R.'s rights under Title VI

of the Civil Rights Act of 1964, Plaintiff has suffered physical, emotional and psychological injuries

and has been damaged in an amount to be determined at trial, but in no event less than twenty five

million dollars ($25,000,000.00).

### AS AND FOR A TWELFTH CLAIM
(against PBCSD in violation of Plaintiff A.R.'s rights
under 42 U.S.C. §1983 a violation of Substantive Due Process)

161.   Plaintiff A.R. repeats and realleges paragraphs 1 through 160 as if fully

stated herein.

162.   Defendant PBCSD violated Plaintiff A.R.'s substantive due process rights to equal

protection under the 14th Amendment of the United States Constitution.   PBCSD allowed

discriminatory practices and anti- Semitic behaviors and actions to become institutionalized which

penalized Plaintiff A.R. for being of the Jewish religion, and subjected the Plaintiff A.R. to a

constant barrage or harassment and bullying for being of the Jewish faith without any type of

intervention or remediation.

163.   The Defendant's failure to take action to prevent the discrimination, bullying and

harassment created or increased the danger to which the Plaintiff A.R. was exposed by their utter

disregard and deliberate indifference toward the discipline students for their conduct.  The school

district's inaction to prevent further harassment and bullying of Jewish students gives rise to a policy

that tolerate's discriminatory behavior and student on student harassment in violation of their own

rules and procedures.

164. The discriminating, harassing, and bullying behavior of the PBCSD students, and the deliberate indifference to the behavior by the Defendant, rose to the level of egregious conduct so brutal and offensive to human dignity as to shock the conscience.

165. That by reason of the aforesaid occurrence, and Defendant's negligence and other conduct as alleged herein Plaintiff has been caused to suffer physical, emotional, and psychological injury.

166. As a result of Defendant, PBCSD's violation of Plaintiff A.R.'s substantive due process rights under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff has suffered physical, emotional, and psychological injury and has been damaged in an amount to be determined at trial, but in no event less than twenty five million dollars ($25,000,000.00).

## AS AND FOR A THIRTEENTH CLAIM
### (against PBCDS for Negligent Infliction of Emotional Distress)

167. Plaintiff A.R. repeats and realleges paragraphs 1 through 166 as if fully stated herein.

168. PBCDS has a duty to adequately supervise the students in their charge and to exercise care as *loco parentis* over the students in their custody and control.

169. PBCSD had actual notice and had sufficient specific knowledge of the dangerous proclivities and anti-Semitic threats by students against Plaintiff A.R.

170. PBCSD lack of interest or disregard to take remedial action to stop the anti-Semitic threats against Plaintiff A.R. created an environment which unreasonably endangers Plaintiff A.R.'s physical safety and caused him to fear for his physical safety.

171. As a result of Defendant PBCDS's failure to exercise a reasonable degree of care over Plaintiff A.R. in their failure to adequately supervise PBCDS students, train their employees, enforce their own policies, and protect Plaintiff A.R. Defendant Pine Bush Central School District

acted in a negligent manner, foreseeably causing injury to Plaintiff A.R., which includes physical,

emotional and psychological injury resulting in damages in an amount in the amount of twenty five

million ($25,000,000) dollars.

### AS AND FOR A FOURTEENTH CLAIM
(against PBCSD in violation of Plaintiff D.R.'s rights
under Title VI of the Civil Rights Act of 1964)

172.    Plaintiff D.R. repeats and realleges  paragraphs 1 through 171 as if

fully stated herein.

173.    Plaintiff D.R. has a protected right to be free from discrimination and harassment

under Title VI of the Civil Rights Act of 1964.

174.    While a student in the Pine Bush Central School District, Plaintiff D.R.,

was subjected to daily discrimination, harassment, and bullying from other students at his school due

to him being Jewish.

175.    Defendant PBCSD had actual notice of the racial and religious hostility occurring at

Crispell Middle School and the Pine Bush Central School District.  PBCSD failed to take remedial

measures to prevent further discrimination, harassment, and bullying of Plaintiff D.R. and other

Jewish students allowing the behavior to continue and become permissible and acceptable

throughout the school district.

176.    Defendant PBCSD acknowledged and was aware of this severe, pervasive, and

disturbing behavior towards Plaintiff D.R., and acted with deliberate indifference towards this

situation which resulted in physical and mental harm to the Plaintiff.

177.    The environment was permeated with racial and religious hostility of such severity or pervasiveness so as to significantly alter the conditions of Plaintiff's educational environment and thereby deny them equal access to the school's resources and opportunities.

178.    As a result of Defendant, PBCSD's breach of Plaintiff D.R.'s rights under Title VI of the Civil Rights Act of 1964, Plaintiff has suffered physical, emotional and psychological damages in an amount to be determined at trial, but in no event less than twenty five million dollars ($25,000,000.00).

## AS AND FOR A FIFTEENTH CLAIM
(against PBCSD in violation of Plaintiff D.R.'s rights
under 42 U.S.C. §1983 a violation of Substantive Due Process)

179.    Plaintiff D.R. repeats and realleges paragraphs 1 through 178 as if fully stated herein.

180.    Defendant PBCSD violated Plaintiff D.R.'s substantive due process rights to equal protection under the 14th Amendment of the United States Constitution.  PBCSD allowed discriminatory practices and anti- Semitic behaviors and actions to become institutionalized which penalized Plaintiff D.R. for being of the Jewish religion, and subjected the Plaintiff D.R. to a constant barrage or harassment and bullying for being of the Jewish faith without any type of intervention or remediation.

181.    The Defendant's failure to take action to prevent the discrimination and harassment created or increased the danger to which the Plaintiff D.R. was exposed by their utter disregard and deliberate indifference towards the discipline students for their conduct.  The school district's inaction to prevent further harassment and bullying towards Jewish students gives rise to a policy

that tolerates and condones discriminatory behavior and student on student harassment in violation of their own rules and procedures.

182.   The discriminating, harassing, and bullying behavior of the PBCSD students, and the deliberate indifference to the behavior by the Defendant, rose to the level of egregious conduct so brutal and offensive to human dignity as to shock the conscience.

183.   That by reason of the aforesaid occurrence, and Defendant's negligence and other conduct as alleged herein Plaintiff has been caused to suffer psychological, mental, and emotional injury.

184.   As a result of Defendant, PBCSD's violation of D.R.'s substantive due process rights  under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff has suffered physical, emotional and psychological damages and has been damaged in an amount to be determined at trial, but in no event less than twenty five million dollars ($25,000,000.00).

## AS AND FOR A SIXTEENTH CLAIM
(against PBCDS for Negligent Infliction of Emotional Distress)

184.   Plaintiff D.R. repeats and realleges paragraphs 1 through 184 as if fully stated herein.

185.   PBCDS has a duty to adequately supervise the students in their charge and to exercise care as *loco parentis* over the students in their custody and control..

186.   PBCSD had actual notice and had sufficient specific knowledge of the dangerous proclivities and anti-Semitic threats by students against Plaintiff D.R.

187.   PBCSD lack of interest or disregard to take remedial action to stop the anti-Semitic threats against Plaintiff D.R. created an environment which unreasonably endangers Plaintiff D.R.'s physical safety and caused him to fear for his physical  safety.

188.    As a result of Defendant PBCDS's failure to exercise a reasonable degree of care over Plaintiff D.R. in their failure to adequately supervise PBCDS students, train their employees, enforce their own policies, and protect Plaintiff D.R., Defendant Pine Bush Central School District acted in a negligent manner, foreseeably causing injury to Plaintiff D.R., which includes physical, emotional and psychological injury resulting in damages in an amount in the amount of twenty five million ($25,000,000) dollars.

## ATTORNEYS FEES

189.    It is respectfully requested that Plaintiffs are entitled to an award of attorneys' fees, pursuant to 42 U.S.C. 1988 (b); 42 U.S.C. 1983.

**WHEREFORE,** Plaintiff demands

A.    On the FIRST Claim, Plaintiff T.E. demands the following relief against Defendant: fifteen million ($25,000,000.00) dollars, against the Defendant for a violation of Title VI of the Civil Rights Act of 1964; and in favor of Plaintiff T.E. against the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

B.    On the SECOND claim, Plaintiff T.E. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a violation of Plaintiff T.E.'s substantive due process rights; and in favor of Plaintiff T.E. against the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

C.      On the THIRD claim, Plaintiff T.E. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a breach of duty to protect; and in favor of Plaintiff T.E. against the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

D.      On the FOURTH claim, Plaintiff T.E. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a negligent infliction of emotional distress; and in favor of Plaintiff T.E. against the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

E.      On the FIFTH Claim, Plaintiff O.C. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars, against the Defendant for a violation of Title VI of the Civil Rights Act of 1964; and in favor of Plaintiff O.C. against each individual Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

F.      On the SIXTH Claim, Plaintiff O.C. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a violation of Plaintiff O.C.'s substantive due process rights; and in favor of Plaintiff O.C. against the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

G.      On the SEVENTH claim, Plaintiff O.C. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a negligent infliction of emotional distress; and in favor of Plaintiff O.C. against the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

H.     On the EIGHTH Claim, Plaintiff D.C. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars, against the Defendant for a violation of Title VI of the Civil Rights Act of 1964; and in favor of Plaintiff D.C. against each individual Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

I.     On the NINTH Claim, Plaintiff D.C. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a violation of Plaintiff D.C.'s substantive due process rights; and in favor of Plaintiff D.C. against the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

J.     On the TENTH claim, Plaintiff D.C. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a negligent infliction of emotional distress; and in favor of Plaintiff D.C. against the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

K.     On the ELEVENTH Claim, Plaintiff A.R. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars, against the Defendant for a violation of Title VI of the Civil Rights Act of 1964; and in favor of Plaintiff A.R. against each individual Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

L.     On the TWELFTH Claim, Plaintiff A.R. demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a violation of Plaintiff A.R.'s substantive due process rights; and in favor of Plaintiff A.R. against

the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00)

dollars; and

M.     On the THIRTEENTH claim, Plaintiff A.R. demands the following relief agains

Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a

negligent infliction of emotional distress; and in favor of Plaintiff A.R. against the Defendant for

Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

N.     On the FOURTEENTH Claim, Plaintiff D.R. demands the following relief against

Defendant: twenty five million ($25,000,000.00) dollars, against the Defendant for a violation of

Title VI of the Civil Rights Act of 1964; and in favor of Plaintiff D.R. against each individual

Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars;

and

O.     On the FIFTEENTH Claim, Plaintiff D.R. demands the following relief against

Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a

violation of Plaintiff D.R.'s substantive due process rights; and in favor of Plaintiff D.R. against

the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00)

dollars; and

P.    On the SIXTEENTH claim, Plaintiff D. R.    demands the following relief against Defendant: twenty five million ($25,000,000.00) dollars each, against the Defendant for a negligent infliction of emotional distress; and in favor of Plaintiff D. R.    against the Defendant for Punitive Damages in the amount of twenty five million ($25,000,000.00) dollars; and

Q.    Attorneys fees pursuant to 42 U.S.C. 1988(b); 42 U.S.C. 1983; and

R.    Together with such other and further relief that this Court may deem just and proper.


Dated: March 27, 2012
       Chester, New York

                                        Meth Law Offices, PC

                                        By: _____
                                        Michael D. Meth- mm9489
                                        METH LAW OFFICES, P.C.
                                        *Attorney for Plaintiffs*
                                        10 Moffatt Lane, Suite Two
                                        Chester, NY 10918
                                        (845) 469 - 9529
                                        (845) 469 - 9989 Fax
                                        michael@methlaw.com

## VERIFICATION

STATE OF NEW YORK        )
                        : ss.:
COUNTY OF ORANGE         )

      Sherri Eccleston, being duly sworn, says: I am one of the Plaintiffs on behalf of my daughter in the above mentioned matter. I have read the foregoing complaint and know its contents; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

                                 Sherri Eccleston

Sworn to before me this
27th day of March, 2012

Notary Public

ELIZABETH OLSEN
NOTARY PUBLIC - STATE OF NEW YORK
ORANGE COUNTY
Reg No. 01OL6223904
MY COMMISSION EXPIRES 08/21/20__

Eccleston et. al. v. PBCSD Verified Complaint

March 27, 2012

# VERIFICATION

STATE OF NEW YORK      )
                       : ss.:
COUNTY OF ORANGE       )

T. E., being duly sworn, says: I am one of the Plaintiffs in the above mentioned matter. I have read the foregoing complaint and know its contents; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

Sworn to before me this
27th day of March, 2012

_____
Notary Public

ELIZABETH OLSEN
NOTARY PUBLIC - STATE OF NEW YORK
ORANGE COUNTY
Reg No. 01OL6223904
MY COMMISSION EXPIRES 06/21/20 14

## VERIFICATION

STATE OF NEW YORK    )
                           : ss.:
COUNTY OF ORANGE    )

      David Cohen, being duly sworn, says: I am one of the Plaintiffs on behalf of my daughter and son in the above mentioned matter. I have read the foregoing complaint and know its contents; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

                                       David Cohen

Sworn to before me this
27th day of March, 2012

Notary Public

ELIZABETH OLSEN
NOTARY PUBLIC - STATE OF NEW YORK
ORANGE COUNTY
Reg No. 01OL6223404
MY COMMISSION EXPIRES 09/21/20 14

# VERIFICATION

STATE OF NEW YORK )

: ss.:

COUNTY OF ORANGE )

O.C. being duly sworn, says: I am one of the Plaintiffs in the above mentioned matter. I have read the foregoing complaint and know its contents; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

Sworn to before me this
27th day of March, 2012

_____
Notary Public

ELIZABETH OLSEN
NOTARY PUBLIC - STATE OF NEW YORK
ORANGE COUNTY
Reg No. 01OL6223904
MY COMMISSION EXPIRES 06/21/20

**VERIFICATION**

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF ORANGE     )

D.C., being duly sworn, says: I am one of the Plaintiffs in the above mentioned matter. I have read the foregoing complaint and know its contents; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

Sworn to before me this
27th day of March, 2012

_____
Notary Public

ELIZABETH OLSEN
NOTARY PUBLIC - STATE OF NEW YORK
ORANGE COUNTY
Reg No. 01OL6223904
MY COMMISSION EXPIRES 0521/20__14

Eccleston et. al. v. PBCSD Verified Complaint      Page 50 of 53

March 27, 2012

## VERIFICATION

STATE OF NEW YORK    )

                             : ss.:

COUNTY OF ORANGE    )

        Jerrold Rosen, being duly sworn, says: I am one of the Plaintiffs on behalf of my two sons in the above mentioned matter. I have read the foregoing complaint and know its contents; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

                                                                          Jerrold Rosen

Sworn to before me this
27th day of March, 2012

Notary Public

ELIZABETH OLSEN
NOTARY PUBLIC - STATE OF NEW YORK
ORANGE COUNTY
Reg No. 01OL8223904
MY COMMISSION EXPIRES 06/21/20 14

## VERIFICATION

STATE OF NEW YORK        )
                         : ss.:
COUNTY OF ORANGE         )

    A.R. , being duly sworn, says: I am one of the Plaintiffs in the above mentioned matter. I have read the foregoing complaint and know its contents; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

Sworn to before me this
27th day of March, 2012

_____
Notary Public

ELIZABETH OLSEN
NOTARY PUBLIC - STATE OF NEW YORK
ORANGE COUNTY
Reg No. 01OL6223904
MY COMMISSION EXPIRES 06/21/20 14

**VERIFICATION**

STATE OF NEW YORK )
                       ; ss.:
COUNTY OF ORANGE )

         D. R. , being duly sworn, says: I am one of the Plaintiffs in the above mentioned matter. I have read the foregoing complaint and know its contents; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

Sworn to before me this
27th day of March, 2012

_____
Notary Public

ELIZABETH OLSEN
NOTARY PUBLIC - STATE OF NEW YORK
ORANGE COUNTY
Reg No. 01OL6223904
MY COMMISSION EXPIRES 08/21/20 14