# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

T.E., by her next friend and parent, SHERRI
ECCLESTON; O.C. and D.C., by their next
friend and parent, DAVID COHEN; A.R. and
D.R., by their next friend and parent,
JERROLD ROSEN,

                    Plaintiffs,

      v.

PINE BUSH CENTRAL SCHOOL
DISTRICT; PINE BUSH CENTRAL
SCHOOL DISTRICT BOARD OF
EDUCATION; PHILIP G. STEINBERG,
Superintendent of Pine Bush Central School
District, in his official and individual
capacities; JOHN BOYLE, Principal of
Crispell Middle School, in his individual and
official capacities; ERIC WINTER, Principal
of Pine Bush Elementary School and former
Assistant Principal of Crispell Middle School,
in his individual capacity; STEVE FISCH,
former Principal of Pine Bush Elementary
School, in his individual capacity; ROBERT
PETERS, former Assistant Principal of
Crispell Middle School, in his individual
capacity; and AARON HOPMAYER,
Principal of Pine Bush High School, in his
official capacity,

                  Defendants.

---

No. 7:12-cv-2303-KMK-PED

**FIRST AMENDED COMPLAINT**

**JURY DEMAND**

Plaintiffs T.E., by her next friend and parent, Sherri Eccleston; O.C. and D.C., by their

next friend and parent, David Cohen; and A.R. and D.R., by their next friend and parent, Jerrold

Rosen (collectively "Plaintiffs"), state the following as their First Amended Complaint against

Defendants Pine Bush Central School District (the "School District" or "District"), Pine Bush

Central School District Board of Education (the "School Board" or "Board), Philip G. Steinberg,

John Boyle, Eric Winter, Steve Fisch, Robert Peters, and Aaron Hopmayer (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.  This is a civil rights case brought by five current and former students of Defendant Pine Bush Central School District in Pine Bush, New York.  All five students are Jewish and have suffered anti-Semitic discrimination, harassment, and bullying by other students for years, but have been unable to get school officials to take appropriate action to protect them.  Plaintiffs bring this action to vindicate their constitutional and statutory rights to equal access to educational opportunities, rights that Defendants have violated and will continue to violate absent relief from this Court.

2.  The anti-Semitic discrimination and harassment within the School District is severe and pervasive, has affected Jewish students from elementary to high school, and has caused physical and psychological injuries.  Plaintiffs have experienced this discrimination and harassment in the form of insults, name-calling, intimidation, threats, and physical attacks on the basis of national origin (Jewish ancestry) and religion.

3.  Each Plaintiff has suffered severe and pervasive verbal harassment on the basis of his/her Jewish ancestry and religion.  Plaintiffs have been subjected to anti-Semitic slurs from other students, including "dirty, disgusting Jew," "stupid Jew," "Christ killer," "Jesus hater," "Kike," "Ashes," and "Crispy"—the latter two slurs being references to burning Jews during the Holocaust.

4.  In addition to vicious name-calling, Plaintiffs were subjected to rampant anti-Semitic graffiti, images, and insults.  For instance, students drew or engraved swastikas on books, notebooks, bathroom walls, hallway walls, desks, bleachers and playground equipment, sometimes with names of Plaintiffs written inside.  The swastikas and other anti-Semitic graffiti

throughout the schools often remained for weeks or months, despite repeated complaints by Plaintiffs and/or their parents to have the graffiti removed.  Students also drew and made images of Hasidic Jews from pipe cleaners, at which they tossed pennies.  Others made swastikas from pipe cleaners.  Students performed "Hitler salutes," discussed celebrating Hitler's birthday, and made anti-Semitic "jokes" about the Holocaust, including the following: "What is the difference between a Jew and a pizza?  One doesn't scream as it gets put in the oven."

5.     The discrimination and harassment suffered by Plaintiffs in the School District has also included intimidation and, in some instances, physical attacks on the basis of their Jewish ancestry and religion.  For instance, students threatened to "burn" some Plaintiffs and to "stab [one Plaintiff] with a menorah and sink her with a cross."  Other students threatened some Plaintiffs during class discussions about the Holocaust by mock-shooting Plaintiffs with their hands pointed like guns.  The physical attacks against Jewish students included a swastika drawn on a student's face against her will, the severe beating of one Plaintiff with a hockey stick, and repeated slapping of another Plaintiff in the head.  Students also threw coins at Plaintiffs, sometimes on a regular basis, and one Plaintiff had to fight off two students who attempted to shove coins in her mouth.

6.     These acts occurred on school grounds, during school-sponsored outings, on school buses, and during school hours.  Plaintiffs and/or their parents reported most of these incidents of harassment to school officials, including teachers, guidance counselors, lunchroom monitors, assistant principals, principals, and the School District Superintendent.  Some of these incidents occurred in plain view of school officials.

7.     The anti-Semitic discrimination and harassment was a relentless and inescapable aspect of Plaintiffs' school life.  Each of the five Plaintiffs has been psychologically traumatized

and some have suffered physical harm.  One is now being home-schooled, another was taken out of the School District for nearly a year to help him recover from the psychological trauma, one is considering the possibility of transferring to a school outside the District, and the other two are still attending schools within the District.  The harassment caused some Plaintiffs' grades to drop and led Plaintiffs to stay home from school at times to avoid the constant harassment.  The harassment has also caused some Plaintiffs to withdraw from friendships, school activities, and school sports.

8.      Despite knowledge of the severe and pervasive anti-Semitic discrimination and harassment that Plaintiffs were suffering throughout the District, Defendants' response to the abuse was grossly inadequate.  Contrary to their obligations as school officials entrusted with the safety and education of all students, the response of District administrators and school employees was to ignore, minimize or dismiss the anti-Semitic harassment.  In some instances, action taken by school officials exacerbated the harassment.  As a result, the harassment persisted across grade levels, academic years, and schools within the District.

9.      Defendants have acted with deliberate indifference to the rampant anti-Semitic discrimination and harassment endured by Plaintiffs.  Their custom, policy or practice of taking little or no action to address the pervasive anti-Semitic harassment has substantially contributed to the anti-Semitic climate in District schools and has exacerbated the anti-Semitic harassment of Plaintiffs and other Jewish children.  Defendants have also failed to adequately train school staff to address and prevent that harassment, to educate students about District policies—including the Student Code of Conduct—that prohibit this kind of harassment, and to enforce the District's Student Code of Conduct.

10.    Plaintiffs seek a declaratory judgment, permanent injunctive relief, and nominal, compensatory, and punitive damages to remedy violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*, and sections 40-c and 40-d of the New York Civil Rights Law.  Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983, Title VI, and the New York Civil Rights Law.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.  Jurisdiction is also proper over Plaintiffs' claims under 28 U.S.C. §§ 2201-2202 because Plaintiffs seek a declaration of their civil rights.  This Court has supplemental jurisdiction over Plaintiffs' related state law claims under 29 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as Plaintiffs' federal claims.

12.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because one or more of the Defendants reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within the judicial district.

## PARTIES

### Plaintiffs

13.    Plaintiff T.E. is a 14-year-old Jewish female and sues here by and through her next friend, parent, and guardian, SHERRI ECCLESTON.  She attended two schools within the District:  Pine Bush Elementary School, from approximately September 2005 through June 2009, and Crispell Middle School, from approximately September 2009 to January 25, 2012.  T.E. is currently in ninth grade and is being home-schooled.  T.E. is a natural person, a current resident of Ulster County, and a citizen of the State of New York.

14.    O.C. is a 14-year-old Jewish female and sues here by and through her next friend, parent, and guardian, DAVID COHEN.  She attended Crispell Middle School from approximately September 2009 through June 2012.  She is currently in ninth grade at Pine Bush High School and has been there since approximately September 2012.  O.C. is a natural person, a current resident of Ulster County, and a citizen of the State of New York.

15.    D.C. is a 17-year-old Jewish male and sues here by and through his next friend, parent, and guardian, DAVID COHEN.  He attended Crispell Middle School from approximately September 2007 through June 2010.  He is currently in eleventh grade at Pine Bush High School and has been there since approximately September 2010.  D.C. is a natural person, a current resident of Ulster County, and a citizen of the State of New York.

16.    A.R. is a 17-year-old Jewish male and sues here by and through his next friend, parent, and guardian, JERROLD ROSEN.  He attended Crispell Middle School from approximately September 2006 through June 2009.  He is currently in twelfth grade at Pine Bush High School and has been there since approximately March 2010.  A.R. is a natural person, a current resident of Orange County, and a citizen of the State of New York.

17.    D.R. is a 15-year-old Jewish male and sues here by and through his next friend, parent, and guardian, JERROLD ROSEN.  He attended Crispell Middle School from approximately September 2008 through June 2011.  He is currently in tenth grade at Pine Bush High School and has been there since approximately September 2011.  D.R. is a natural person, a current resident of Orange County, and a citizen of the State of New York.

**Defendants**

18.    Defendant PINE BUSH CENTRAL SCHOOL DISTRICT, an education corporation and association existing pursuant to the New York Education Law, is an independent public school district covering seven townships located in portions of Ulster, Sullivan, and

Orange Counties, New York.  The School District is a "person" within the meaning of 42 U.S.C. § 1983.  Upon information and belief, the School District and each of its component schools are recipients of federal financial assistance.  Pine Bush Elementary School, Crispell Middle School, and Pine Bush High School are schools in the District.

19.    Defendant PINE BUSH CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION is a board of education within the meaning of N.Y. Educ. Law § 1804 and manages the School District.  The School Board is a "person" within the meaning of 42 U.S.C. § 1983.  Upon information and belief, the Board receives federal financial assistance.

20.    Defendant PHILIP G. STEINBERG ("Superintendent Steinberg" or "Mr. Steinberg"), sued in both his official and individual capacities, is the current Superintendent of the School District.  Upon information and belief, he has held this position since August 2008. As Superintendent and the District's chief executive officer, he holds final policymaking authority for the School District with respect to day-to-day enforcement of the District's Student Code of Conduct, Students' Bill of Rights, and anti-bullying policies within the School District. As Superintendent, he has the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment within the District and to discipline perpetrators of such discrimination and harassment.  Mr. Steinberg is a natural person and, upon information and belief, resides in the State of New York.

21.    Defendant JOHN BOYLE ("Principal Boyle" or "Mr. Boyle"), sued in his official and individual capacities, is Principal of Crispell Middle School.  Upon information and belief, he has held this position since at least September 2006.  As Principal, Mr. Boyle has final policy making authority with respect to the day-to-day enforcement of the District's Student Code of Conduct, Students' Bill of Rights, and anti-bullying policies within Crispell Middle School.  As

Principal, Mr. Boyle has the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment within Crispell Middle School and to discipline perpetrators of such discrimination and harassment.  Mr. Boyle is a natural person and, upon information and belief, resides in the State of New York.

22.    Defendant ERIC WINTER ("Assistant Principal Winter" or "Mr. Winter"), sued in his individual capacity, is Principal of Pine Bush Elementary School.  Upon information and belief, he has held this position since July 2011.  Previously, Mr. Winter was Assistant Principal of Crispell Middle School and, upon information and belief, held that position from approximately September 2010 through June 2011.  As Assistant Principal of Crispell Middle School, Mr. Winter had the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment at Crispell Middle School and to discipline perpetrators of such discrimination and harassment.  Mr. Winter is a natural person and, upon information and belief, resides in the State of New York.

23.    Defendant STEVE FISCH ("Principal Fisch" or "Mr. Fisch"), sued in his individual capacity, was Principal of Pine Bush Elementary School.  Upon information and belief, he held that position from approximately September 1991 until his retirement from the School District in July 2011.  As Principal, Mr. Fisch had final policy making authority with respect to the day-to-day enforcement of the District's Student Code of Conduct, Students' Bill of Rights, and anti-bullying policies within Pine Bush Elementary School.  As Principal, Mr. Fisch had the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment within Pine Bush Elementary School and to discipline perpetrators of such discrimination and harassment.  Mr. Fisch is a natural person and, upon information and belief, resides in the State of New York.

24.    Defendant ROBERT PETERS ("Assistant Principal Peters" or "Mr. Peters"), sued in his individual capacity, was Principal of Crispell Middle School.  Upon information and belief, he held that position from at least September 2006 until September 2010.  As Assistant Principal, Mr. Peters had the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment at Crispell Middle School and to discipline perpetrators of such discrimination and harassment.  Mr. Peters is a natural person and, upon information and belief, resides in the State of New York.

25.    Defendant AARON HOPMAYER ("Principal Hopmayer" or "Mr. Hopmayer"), sued in his official capacity, is Principal of Pine Bush High School.  He has held this position since October 2007.  As principal, Mr. Hopmayer has final policy making authority with respect to the day-to-day enforcement of the District Student Code of Conduct, the Students' Bill of Rights, and anti-bullying policies within the School District.  As Principal, Mr. Hopmayer has the ability and authority to take corrective action on behalf of the School district to stop discrimination and harassment within Pine Bush High School and to discipline perpetrators of such discrimination and harassment.  Mr. Hopmayer is a natural person and, upon information and belief, resides in the State of New York.

## **STATEMENT OF FACTS**

**Plaintiff T.E.**

26.    From approximately September 2005 to January 25, 2012, T.E. was a student in the School District.  T.E. is a Jewish female.  From approximately September 2005 through June 2009—from second through fifth grade—T.E. attended Pine Bush Elementary School ("PBES").

27.    The anti-Semitic discrimination and harassment against T.E. began in fifth grade, while she was a student at PBES.  T.E. suffered discrimination and harassment in the form of

physical assaults, intimidation, threats, insults, and name-calling on the basis of her national

origin (Jewish ancestry) and religion.

28.     Early in T.E.'s fifth grade year, a school field trip to the Statue of Liberty, Ellis

Island, and the Liberty Science Museum was scheduled for October 8, 2008, and the children

were to return after sundown, when the Jewish holiday of Yom Kippur began.  This meant that

T.E. could not attend the field trip.  When T.E.'s mother, Sherri Eccleston, learned of this

conflict with the Jewish holiday, she spoke with PBES Principal Fisch to voice her concerns and

to see if T.E. could attend the trip on another date.  The school trip was not offered on other dates

and T.E. was very upset about having to miss a fun field trip that her friends were attending.

29.     Missing that trip resulted in further consequences for T.E.  For approximately one

week after the field trip, many school lessons and assignments were based on that trip.  Because

T.E. had always been an exemplary student, the fact that she could not actively participate in

these lessons left her feeling distraught.  Although T.E. informed her teacher that she was unable

to attend the field trip because she is Jewish, the teacher did not provide her with any additional

materials to review that would have allowed T.E. to complete her assignments adequately.

30.     Between October 10, 2008, and June 1, 2009—while T.E. was still in fifth grade—

T.E. saw two classmates, K.L. and N.B., draw swastikas in their planners during homeroom.

T.E. was appalled by this and told her mother about it when she got home from school.  T.E.'s

mother, Ms. Eccleston, was especially concerned because one of the students drawing swastikas

was the son of the school's psychologist.  Ms. Eccleston met with PBES Principal Fisch the next

day to report the incident.  Mr. Fisch was indifferent and did not view the incident as cause for

concern.  He took no action either to discipline the students or to make sure they understood why

swastikas are particularly offensive to Jewish students.

31.     Mr. Fisch's failure to take action gave rise to further harassment and discrimination directed at T.E.  A month after the incident, while T.E. was riding the school bus home, K.L., one of the students who had drawn a swastika on his planner, looked T.E. in the eyes and called her "a Jew" in a demeaning tone.  This scared T.E.  When T.E. exited the bus, K.L. gave T.E. and Ms. Eccleston the middle finger, which insulted and upset both of them.  Ms. Eccleston reported the incident to the school bus driver, Art Champion, and the school bus company.  Neither the bus company nor any PBES or District employee took any action.

32.     In the spring of T.E.'s fifth grade year, sometime between March 21, 2009, and May 1, 2009, T.E. saw a swastika engraved on the slide in PBES's schoolyard.  This caused T.E. great emotional distress.  The next day, Ms. Eccleston reported this to Principal Fisch and reminded him of the other anti-Semitic incidents that T.E. had suffered.  Ms. Eccleston also told School District Superintendent Steinberg about the swastika engraved on the schoolyard slide and all of the other anti-Semitism T.E. had witnessed or endured at PBES.  Neither Principal Fisch nor Superintendent Steinberg took appropriate action.  In fact, the swastika remained on the slide when T.E. graduated from PBES and was still there over a year after Ms. Eccleston had reported it to Principal Fisch and Superintendent Steinberg.

33.     From approximately September 2009 to January 25, 2012—from sixth through part of eighth grade—T.E. attended Crispell Middle School ("CMS").  While at CMS, T.E. experienced severe and pervasive anti-Semitic discrimination and harassment by fellow students in the classroom, the gymnasium, the lunchroom, the schoolyard, and on the school bus.

34.     The anti-Semitic environment permeated many aspects of school life at CMS.  T.E. saw swastikas drawn and carved on walls of the girls' bathrooms and stalls, on textbooks, on the playground, on school desks, and in hallways.  Although T.E. reported that there was a swastika

engraved on her music classroom desk, it took the school over two weeks to remove the swastika on her desk.

35.    The school bus was a particularly hostile environment, in part because middle and high school students rode together, making younger students vulnerable to harassment by older students.  On April 19, 2010, while riding the bus in the sixth grade, T.E. overheard a high school student discussing plans to celebrate Hitler's birthday the following day.  T.E.'s mother, Ms. Eccleston, immediately called Superintendent Steinberg to report the incident, but was unable to reach him.  His secretary, however, asked Ms. Eccleston, "How do [the students] even know that [T.E.] is Jewish?"  The secretary's response illustrates the District's failure to educate and train its employees how to respond to complaints about anti-Semitic discrimination and harassment.

36.    Ms. Eccleston then called Assistant Superintendent Deborah Brush.  In addition, to informing Ms. Brush that students were planning to celebrate Hitler's birthday the following day, Ms. Eccleston informed her that the swastika on the slide at PBES was still there, even though she had reported it to Mr. Steinberg and Mr. Fisch approximately a year earlier.  Ms. Brush had the swastika removed from the slide, but her attempt to address students' plans to celebrate Hitler's birthday only exacerbated the hostile environment on the school bus.

37.    T.E. did not attend school the following day, for fear of what students might do to celebrate Hitler's birthday.  But when she returned on April 21, she was singled out for further harassment for reporting the incident to Ms. Brush.  When T.E. entered the bus, the bus driver made her sit in the first row.  He yelled at T.E. in front of other students and accused her of lying about the planned celebration.  When T.E. began to cry and attempted to send her mother a text

message regarding the incident, the bus driver berated her for crying and attempted to confiscate her cell phone.  T.E. was humiliated and afraid.

38.     Ms. Eccleston called the bus company to complain about how the bus driver had treated T.E.  A representative from the company arranged for Ms. Eccleston to participate in a three-way phone conference with the bus manager and the bus driver.  During the conversation, the driver continued to accuse T.E. of being a liar and nothing was resolved.  The incident resulted in Ms. Eccleston having to drive T.E. to school whenever possible because T.E. feared for her safety on the bus.  Moreover, the incident illustrates how District officials improperly relinquished their responsibility to protect T.E. from harassment to the bus company.  The results were disastrous.

39.     The bus continued to be an abusive environment for T.E.  In seventh grade, on May 25, 2011, a student on the bus pulled up his shirt to show T.E. and other students a drawing of a Hasidic Jew on his stomach.  Another student said, "Let's throw pennies in his mouth."  T.E. was offended and reported the incident to her mother via text message.

40.     Ms. Eccleston also reported the incident and all prior incidents of anti-Semitic harassment to Sergeant Eric Meier ("Sgt. Meier"), an officer with the Town of Crawford Police Department ("Crawford P.D."), who at the time was also a member of the School Board.  Based on Sgt. Meier's suggestion, Ms. Eccleston also reported all prior incidents to School Board Member Lloyd Greer, Jr. ("Mr. Greer").  Neither Sgt. Meier nor Mr. Greer took any remedial action.

41.     Less than a week later, on approximately May 31, 2011, a student who had made comments about "White Power" sat next to T.E. on the bus and would not let T.E. out of the seat

13

when she asked to move.  T.E. reported the incident to Ms. Eccleston via text message, and Ms. Eccleston immediately called CMS Assistant Principal Winter.

42.    In response, Mr. Winter called the bus company to relay Ms. Eccleston's complaint.  While students were seated on the bus, a member of the bus company contacted the bus driver over radio transmission to report the complaint.  Students seated in the bus's front seats were in earshot of the radio transmission and heard the entire conversation.  T.E.'s classmates began discussing what they heard.  The driver shouted out to T.E. to inform her that her mother had called to complain and to move her to another seat.  Once again, T.E. was humiliated in front of her classmates.  When the bus driver moved T.E. to another seat, a student threatened her to commit a violent act against her and told her that she would get beaten up when she went to the eighth grade.  These threats were made in the presence of a school official, but no remedial action was taken.

43.    Ms. Eccleston called Assistant Principal Winter to tell him both how the bus company had handled the situation and that a student had threatened T.E., and to ask the school to provide an alternative form of transportation for T.E.  Mr. Winter took no action.  After that incident, T.E. stopped taking the bus to school as she no longer felt safe riding the bus.

44.    The classrooms, lunchroom, and schoolyard at CMS were equally hostile environments, and the District's deliberate indifference to the rampant anti-Semitic harassment permitted students to find innovative ways to express their anti-Semitism.  For instance, in T.E.'s seventh grade math class, D.B. constructed a Hasidic Jew out of pipe cleaners, and another student, C.L. made a swastika out of pipe cleaners in the lunch room.  C.L. told T.E. that he was going to give the pipe cleaner to Plaintiff O.C.  Mr. Winter witnessed the incident, but his only response was to give C.L. in-school suspension.

45.     Mr. Winter's insufficient response did not deter the harassment and the anti-Semitic abuse continued.  In January 2011, during a lesson about the Holocaust in T.E.'s seventh grade English class, C.O. told T.E. that she should be burned.  On or about April 11, 2011, T.E.'s classmate S.G. called her "a Jew" in an insulting manner.  S.G. also stated that T.E. should be burned, and called her "Crispy" in reference to Nazis burning Jews during the Holocaust.  T.E.'s mother reported these threats to Mr. Winter, but he took no action.

46.     The school administration's deliberate indifference to the verbal threats gave rise to other forms of verbal harassment.  For example, over the course of the spring semester of T.E.'s seventh grade year, students began using the word "Jew" as an insult and to mock Jewish students.  On or about April 27, 2011, T.E. heard her classmate B.B. making fun of Jewish people and on or about April 28, 2011, T.E. overheard a discussion between two non-Jewish students in her math class in which one student, D.B., accused D.C. of not knowing something because he was a Jew.  T.E. reported both incidents to Mr. Winter, but Mr. Winter took no action.

47.     As a result of the rampant anti-Semitism at CMS, Ms. Eccleston, T.E., O.C. and O.C.'s father, David Cohen,  attended a meeting with Superintendent Steinberg, Crawford Police Officer James Johnson, and School Board Member Lloyd Greer, Jr. to discuss the harassment and the possibility of bussing T.E. and O.C. to Circleville Middle School ("Circleville"), another school within the District.  Mr. Cohen and Ms. Eccleston wanted their daughters to know that they would have a place to go if they did not feel safe at CMS.

48.     During the meeting, Mr. Steinberg promised that he would institute changes within the District, including better communication with his staff to ensure that it was more informed about the incidents of discrimination and harassment.  Moreover, Mr. Steinberg stated that he

15

would look into bussing T.E. and O.C. to Circleville and that it may be a possibility. Nevertheless, when the situation at CMS did not improve and Mr. Cohen and Ms. Eccleston requested that T.E. and O.C. be bussed to Circleville, Mr. Steinberg denied their request. The incident, once again, illustrates Mr. Steinberg's failure to take steps to protect T.E. and O.C. from anti-Semitic harassment and discrimination.

49.    During eighth grade, T.E. was severely beaten in gym class. Her hand was swollen and severely bruised. On December 12, 2011, classmate D.R. hit T.E. in the hand and ankle with a hockey stick and classmate J.G. lifted her hockey stick and told T.E. that she was going to hit her in the face. The two had previously called T.E. "stupid," "annoying," and "retarded" because T.E.'s team was beating them in a hockey game. In response to J.G.'s threat, T.E. threatened to punch J.G. in the "fucking face." The gym teacher, Ms. Giuliani, heard T.E.'s defense and reprimanded T.E. for what she had said to J.G. She failed to reprimand J.G. or D.R., even after T.E. explained to the teacher that her comment was in response to D.R.'s physical assault and J.G.'s provocations. After Ms. Giuliani reprimanded T.E., J.G. and D.R. continued to physically assault T.E. by pushing her into other students. T.E. and her friend S.W. reported the assaults to their guidance counselor, Michael Callo, but Mr. Callo sent the two students back to class and took no steps to reprimand J.G. or D.R., or to report the harassment to the Principal or Assistant Principal.

50.    The day of the incident, Ms. Eccleston took T.E. to an urgent care facility and discovered that T.E.'s thumb was fractured. T.E. was in pain over the weekend, and an ambulance worker told Ms. Eccleston that T.E.'s hand did not look good and that she should have it examined. A doctor's final diagnosis was that T.E. had fractured her thumb and had

probably bruised her bone.  The doctor ordered that T.E.'s hand be set in a cast and ordered a

follow–up visit over the winter break.

51.     Ms. Eccleston filed several complaints regarding the physical attack on her

daughter.  First, on the way to the urgent care facility, she called CMS's new Assistant Principal,

Christopher Mummery ("Mr. Mummery"), to inform him what had occurred.  She also followed

up with a visit to the school to speak with Mr. Mummery on the Monday following the incident.

Ms. Eccleston also filed a complaint with Police Officer John Levison of the Crawford P.D.

Officer Levison assured Ms. Eccleston that he would investigate the incident and speak with

school officials.

52.     The Tuesday after the assault, Mr. Mummery spoke with T.E. and D.R. in his

office.  Mr. Mummery appeared to question the severity of the injury and asked T.E. why she

had not gone to the nurse's office after the injury.  Moreover, despite witnesses who could

corroborate T.E.'s version of events, D.R. told Mr. Mummery that it was T.E. who had hit her,

yet D.R. had not previously reported to anyone that T.E. had been the one who committed the

assault.  Further, D.R. had no physical marks.  D.R. said that she would not apologize for hitting

T.E. and suggested that T.E. had slammed her hand into a locker to frame D.R.  Mr. Mummery

told T.E. that he would not take any action against D.R. because he believed that both students

were at fault.

53.     When T.E. returned to eighth grade after winter break, the hostile environment and

anti-Semitic harassment and discrimination continued.  On or about January 23, 2012, in health

class, M.S. told an anti-Semitic joke in front of T.E. about Jews and Boy Scout Camp.  On

January 24, 2012, CMS Principal John Boyle ("Mr. Boyle") called T.E. into his office because

Ms. Eccleston had complained about the joke and about a swastika in the girls' bathroom.

17

During the meeting, T.E. explained to Mr. Boyle exactly where the swastika was located, yet Mr. Boyle told Ms. Eccleston that it was not there when he went to check later in the day, even though the swastika was in fact still there. Eventually, Plaintiff O.C. got tired of seeing the swastika and removed it herself.

54.    On January 24, 2012, during a mid-term exam in math class, two students, B.G. and A.F., performed Hitler salutes. The teacher took no action against either student, though their conduct clearly violated the District's Student Code of Conduct.

55.    The next day, on January 25, 2012, B.G., one of the students who had performed a Hitler salute during the mid-term exam assaulted T.E. by throwing and hitting her with a dime. T.E. was so upset that she texted her mother saying that, if she had to go back to school, she would have a nervous breakdown. Ms. Eccleston called the Mobile Mental Health Group and a representative advised Ms. Eccleston that CMS was an unhealthy environment for T.E. Ms. Eccleston also reported the incident to the Town of Crawford Police Department. That incident was the last straw for T.E. January 25, 2012, was T.E.'s last day at CMS and she is now being home schooled.

56.    As a result of the rampant anti-Semitic discrimination and harassment at PBES and CMS, T.E. has suffered physical, psychological, and emotional harm. T.E. has experienced extreme stress resulting from the constant bullying on the basis of her Jewish ancestry and religion. The anti-Semitic harassment and bullying consumed T.E.'s every thought. T.E.'s grades declined significantly, she withdrew from friendships, she stopped going into the Town of Pine Bush, and she stopped participating in school sports. In short, T.E. has been completely devastated by her classmates' anti-Semitic harassment and discrimination, which the School District, School Board members, and school employees condoned.

57.    The grossly inadequate response by Superintendent Steinberg, Principal Boyle, former Assistant Principal Winter, former Principal Fisch, School Board members, and other School District officials to the anti-Semitic harassment endured by T.E. effectively denied her access to educational programs, activities, and opportunities.

58.    While T.E. was a student in the District, neither the District nor any school official conducted adequate education or training for students, teachers, or administrators to address the discrimination and harassment of Jewish students.

**Plaintiff O.C.**

59.    O.C. has been a student in the School District since approximately September 2009.  O.C. is a Jewish female.  From approximately September 2009 through June 2012—from sixth through eighth grade—O.C. attended CMS.  O.C became a ninth grade student at Pine Bush High School ("PBHS") in September 2012.

60.    The anti-Semitic discrimination and harassment against O.C. began when she entered CMS in sixth grade.  O.C. has suffered discrimination and harassment in the form of physical assaults, intimidation, threats, insults, and name-calling on the basis of her national origin (Jewish ancestry) and religion.

61.    The anti-Semitic physical assaults on O.C. started during a sixth grade field trip to Mamakating Town Park.  During that trip, M.C. made fun of O.C. for being Jewish by picking up a penny and saying, "Look, I'm a Jew."  M.C. subsequently threw sand at O.C.  O.C.'s friend, E.W., defended her and M.C. and E.W. ended up in a physical altercation at the Park.  O.C. was terrified.  Plaintiff T.E. also witnessed this disturbing incident.

62.    The anti-Semitic physical assaults escalated during O.C.'s eighth grade year.  In approximately September or October of 2010, O.C.'s classmate, C.V., attempted to shove a quarter down her throat while his brother, J.V., held O.C.'s arms so that she could not move.

The students did not succeed because O.C. was able to break free and punched C.V. in the chest. O.C. reported the incident to school officials, but they failed to take any action.

63.    O.C. was also subjected to anti-Semitic physical and verbal threats while attending CMS.  In sixth grade, during a video about the Holocaust, classmate M.K. looked at O.C., formed his hand into the shape of a gun, and stated: "Look, I'm killing Jews."  Plaintiff T.E. witnessed this incident.  O.C. was afraid and reported the incident to her teacher, Donna Coffey. Ms. Coffey wrote M.K. up, but failed to take any additional action.  The same school year, O.C. overheard a conversation on the school bus where one student made fun of the Holocaust and said that O.C. should be burned.  O.C. informed the bus driver about the discussion and the bus driver's only response was that "she would listen for it next time."

64.    In seventh grade, O.C. heard a student tell another student that they should "stab [O.C.] with a menorah and sink her with a cross."  O.C. feared for what the other students might do to her.  At lunch time, another student, K.R., told O.C.'s friends that O.C. should "go back to picking up pennies from the street."  In seventh grade Spanish class, a student drew Nazi signs on his binder and told O.C. that he was Hitler and had come to instill fear in her.  He succeeded in this goal.  Although O.C. reported both of these incidents to school officials, they did not take any remedial action.

65.    O.C. was also subjected to ethnic slurs throughout her three years at CMS.  In sixth grade, her classmate S.G. called her "Jesus hater" and another student called her "Christ killer." Students in the sixth grade repeatedly called O.C. "stupid Jew."  O.C. reported these epithets to school officials, but no action was taken.  In seventh grade, O.C.'s classmate I.D. called her a "dirty disgusting Jew," causing a screaming match between the two students.  Both students were sent to Assistant Principal Winter's office.  Mr. Winter let O.C. and I.D. talk out their differences

and I.D. apologized so that she could leave.  Mr. Winter took no further action and students

continued to harass O.C, saying on several subsequent occasions:  "You're such a stupid Jew!"

In eighth grade, many students told O.C. that she had "stupid Jew curls," which caused her to

feel self-conscious about how she looked.  One student, J.G., curled her hair in March 2012 as a

way of making fun of O.C.

      66.    O.C. was also subjected to an anti-Semitic environment that included assaults on

other Jewish students and threatening conversations between students about other Jewish

students.  For instance, during sixth grade, O.C. saw her classmate J.B. come running out of a

classroom holding her hand over her face to cover a swastika that K.C. had drawn on it.  Another

student, C.N., had held J.B.'s hands behind her back so that K.C. could draw the swastika.

Infuriated by the incident, O.C. slapped C.N.  O.C. was subsequently sent to the Principal's

office and Principal Boyle asked O.C.:  "Why would you take offense to that when it was not

directed at you?"  O.C. was outraged that Mr. Boyle did not understand why K.C.'s actions were

offensive to all Jewish students, even though the assault was not directed specifically at O.C.

The fact that Mr. Boyle did not comprehend how this act could offend any other Jewish student

makes clear that the School District failed to educate and train employees in the highest levels of

leadership about how to respond to anti-Semitic discrimination and harassment.

      67.    The hostile environment at CMS also included anti-Semitic graffiti throughout the

school.  For instance, O.C. reported countless swastikas scrawled in textbooks, etched in

bathroom stalls, and drawn on desks.  In eighth grade, O.C. saw a particularly offensive swastika

in a bathroom stall that contained the following inscription in its center:  "For any Jew who

wants it."  She reported this Assistant Principal Mummery, as did Plaintiff T.E., but school

officials did not remove the offensive graffiti.  O.C. removed the swastika herself on January 24, 2012.

68.     In seventh grade English class, over the course of several weeks, O.C. reported a re-appearing swastika on her desk to Assistant Principal Winter.  As soon as Mr. Winter had the swastika removed, a new one would appear in its place.  At one point, there were three swastikas on her desk; inside one of them someone had written "[O.C.] is a Jew."  That same year, someone drew a swastika next to O.C.'s picture in C.M.'s yearbook.  Mr. Winter responded by blocking out the swastika from the yearbook, but took no further remedial action.  Mr. Winter's responses were grossly inadequate, as the swastikas continued to appear.

69.     When in the eighth grade, students defaced a poster of President Obama in O.C.'s Social Studies class with a swastika.  The teacher, Heather Hennessy, did not take the poster down, even after O.C. complained three times.  O.C. also reported the swastika to the substitute teacher after Ms. Hennessy left for maternity leave, but the substitute teacher also failed to remove the poster.  Assistant Principal Mummery finally took the poster down, but only after it had already been up for over a month.

70.     As a result of the rampant anti-Semitic discrimination and harassment that O.C. experienced at CMS, she has suffered physical, psychological and emotional harm.  O.C. has become severely distracted during school hours and cannot focus on her studies.  O.C. does not participate in extracurricular activities because she is afraid of the anti-Semitic harassment and discrimination.  The intimidation, name calling, threats, and verbal and physical assaults, have caused O.C. to become socially isolated.  Though O.C.'s grades were once outstanding, they have fallen dramatically.

71.    The grossly inadequate response of CMS school officials and employees to the anti-Semitic discrimination and harassment that O.C. endured effectively denied O.C. access to educational programs, activities and opportunities.

72.    Since O.C. has been a student in the School District, neither the District nor any school official conducted adequate education or training for students, teachers, administrators to address the discrimination and harassment of Jewish students.

**Plaintiff D.C.**

73.    D.C. has been a student in the School District since approximately September 2007.  D.C. is a Jewish male.  Plaintiffs D.C. and O.C. are siblings.  From September 2007 through June 2010—from sixth through eighth grade—D.C. was a student at CMS.  D.C. has been attending PBHS since approximately September 2010 and is currently in eleventh grade.

74.    The anti-Semitic discrimination and harassment against D.C. began when he entered CMS in sixth grade and have continued throughout his matriculation at both CMS and PBHS.  D.C. has suffered discrimination and harassment in the form of physical assaults, intimidation, threats, insults, and name-calling on the basis of his national origin (Jewish ancestry) and religion.

75.    From sixth through ninth grades, D.C. suffered physical assaults at CMS and PBHS because of his Jewish ancestry and religion.  Students at both CMS and PBHS threw change at D.C. on an almost daily basis.  During that same time frame, students also threatened to burn D.C. in the oven—a reference to the Holocaust—causing D.C. great upset, anxiety, and fear.  In ninth grade, a PBHS senior frequently slapped D.C. in the face while calling him "Kike," as D.C. exited the bus.

76.     D.C. has also endured anti-Semitic insults, name-calling, and intimidation throughout his matriculation at CMS and PBHS.  In eighth grade, CMS students sang songs

about killing "niggers" and Jews in D.C.'s presence.  From eighth through ninth grade, CMS and PBHS students took D.C.'s belongings out of his backpack and threw them on the ground because he is Jewish.  From sixth through eighth grade, CMS students threw change into garbage receptacles and told D.C. to "go get it," causing him additional fear and anxiety.  In ninth grade, PBHS students repeatedly called D.C. "Ashes," a reference to burning Jews during the Holocaust.  In tenth grade, multiple PBHS students in Kelly King's math class regularly bullied Jewish students in front of Ms. King.  Although D.C. complained about the bullying, Ms. King failed to take any corrective action.

77.     School officials and employees, including CMS's Principal and Assistant Principal, CMS teacher Kelly King, and PBHS Principal Hopmayer, knew about many of the bullying incidents that D.C. suffered while attending their respective schools, but failed to take appropriate corrective action to address the rampant anti-Semitic discrimination and harassment.

78.     As a result of the rampant anti-Semitic discrimination and harassment at CMS and PBHS, D.C. has suffered physical, psychological, and emotional harm.  D.C. experiences immense stress and anxiety and fears attending school.  D.C. has become socially isolated and no longer participates in extracurricular activities for fear of being bullied by his peers.

79.     The grossly inadequate response of school officials and employees at CMS and PBHS to the anti-Semitic discrimination and harassment that D.C. has endured effectively denied D.C. access to educational programs, activities and opportunities.

80.     Since D.C. has been a student in the School District, neither the District nor any school official conducted adequate education or training for students, teachers, administrators to address the discrimination and harassment of Jewish students.

**Plaintiff A.R.**

81.    A.R. has been a student in the School District since approximately June 2002, with the exception of approximately one year, from September to March 2010, during his ninth grade year when A.R.'s parents removed him from the District because of the trauma he was suffering from the rampant anti-Semitism at the school.  A.R. is a Jewish male.  From approximately September 2006 through June 2009—sixth to eighth grade—A.R. attended CMS.  A.R. has been attending PBHS since approximately March 2010 and is currently in twelfth grade.

82.    The anti-Semitic discrimination and harassment against A.R. began when he entered seventh grade at CMS and have continued throughout his matriculation at both CMS and PBHS.  A.R. has suffered discrimination and harassment in the form of physical assaults, intimidation, threats, insults, and name-calling on the basis of his national origin (Jewish ancestry) and religion.

83.    When A.R. was in seventh grade, CMS students threw pennies and other coins at him and shouted ethnic slurs, including "stupid Jew."  Throughout his seventh grade year, he witnessed swastikas carved or drawn on desks or walls.  Teachers and staff witnessed the severe and pervasive anti-Semitic harassment that A.R. experienced, as many of the incidents occurred in the school cafeteria, but none of them took action to protect A.R. or stop the harassment.

84.    The anti-Semitic discrimination and harassment continued when A.R. was in eighth grade.  CMS students pelted A.R. with coins during lunchtime.  Countless students sitting on a bench during lunch pestered A.R. and his friends for change, implying that Jews would have pockets full of change, and they called A.R. a "stupid Jew" if he didn't give them any change.  One CMS student put a piece of tin foil on his head in the cafeteria and said to A.R., "I have a yarmulke; I am a Jew just like you."  Again, these incidents occurred in front of teachers in the school cafeteria, but the teachers failed to take any corrective action.

85.     On another occasion, a student asked A.R. if he was Jewish, then told A.R. the following anti-Semitic "joke":  "What is the difference between a Jew and a pizza?  One doesn't scream as it gets put in the oven."  Another student grabbed a history book, flipped to the section discussing the terrorist attacks on September 11, 2001, and stated that A.R. was responsible for the attacks.  A.R. reported this incident to CMS Principal Boyle.  Mr. Boyle merely placed the student on in-school suspension and asked the student to write A.R. an apology.  Mr. Boyle did not follow up to ensure that A.R. received the apology—which he didn't—and Mr. Boyle failed to take steps to address the widespread anti-Semitism that affected A.R. on an almost daily basis.

86.     Halfway through eighth grade, a student walked up to A.R. at lunch time and attempted to punch A.R. in the face.  A.R. stopped the student and fought back.  The student provoked A.R. because of his Jewish ancestry and religion.  School officials nonetheless suspended A.R. and his anti-Semitic attacker.

87.     A.R.'s parents, Jerrold and Lucinda Rosen, met with CMS Assistant Principal Robert Peters on at least five occasions to address the rampant anti-Semitic bullying of his two sons, A.R. and D.R.  Mr. Peters falsely told Mr. and Ms. Rosen that no one else had reported similar incidents of anti-Semitic harassment at CMS.  Neither Mr. Peters nor Principal Boyle took appropriate steps to address the severe and pervasive anti-Semitic discrimination and bullying that A.R. and D.R. were suffering.  Indeed, they did not even enforce the District's Student Code of Conduct, which prohibited such harassment.

88.     Because A.R. was so traumatized by the anti-Semitic bullying, and school officials' failure to take corrective action, Mr. Rosen removed A.R. from District schools for almost a year.  Since A.R. has returned to the District as a student at PBHS, he has continued to

suffer a hostile environment because of his Jewish ancestry and religion.  He continues to see swastikas written in marker on the bathroom walls and on the bleachers in the gym.

89.     As a result of the rampant anti-Semitic discrimination at CMS and PBHS, A.R. has suffered physical, psychological and emotional injuries.  A.R. experiences immense stress and anxiety and fears attending school.  He has become socially isolated and no longer participates in extracurricular activities for fear of being bullied by his peers.  In addition, A.R.'s grades have suffered significantly.

90.     The grossly inadequate response of school officials and employees at CMS and PBHS to the anti-Semitic discrimination and harassment that A.R. has endured effectively denied A.R. access to educational programs, activities and opportunities.

91.     Since A.R. has been a student in the School District, neither the District nor any school official conducted adequate education or training for students, teachers, administrators to address the discrimination and harassment of Jewish students.

**Plaintiff D.R.**

92.     D.R. has been a student in the School District since approximately September 2002.  D.R. is a Jewish male.  Plaintiffs D.R. and A.R. are siblings.  From September 2008 through June 2011—from sixth through eighth grade—D.R. was a student at CMS.  D.R. has been attending PBHS since approximately September 2011 and is currently in tenth grade.

93.     The anti-Semitic discrimination and harassment against D.R. began when he entered sixth grade at CMS and have continued throughout his matriculation at both CMS and PBHS.  D.R. has suffered discrimination and harassment in the form of physical assaults, intimidation, threats, insults, and name-calling on the basis of his national origin (Jewish ancestry) and religion.

94.     During D.R.'s first week of sixth grade, in September 2008, CMS students asked D.R. if he was Jewish between fifteen to twenty times.  This upset him and caused him anxiety at school.  The next month, in October 2008, students in the cafeteria asked him if he had "Jew gold."  He did not know how to respond.  Later that same month, approximately twenty students threw coins at him in the cafeteria, causing him further anxiety and fear.  D.R. reported the anti-Semitic harassment to the lunchroom monitors, guidance office, and Assistant Principal Robert Peters.  None of these school officials and employees took any corrective action.

95.     In November 2008, D.R. filed a report with the school administration regarding the anti-Semitic harassment and discrimination he was suffering.  A school employee made an announcement over the loud speaker that harsh action would be taken against any student caught discriminating.  Although students refrained from bullying D.R. for about a month after this announcement, they resumed their bullying once again.

96.     In December 2008, D.R. went on a school ski trip to Belleayre Mountain in New York State.  On the way home, an eighth grade student asked D.R. if he was Jewish.  When D.R. replied that he was, the student and others began slapping D.R. on the back of the head for the next fifteen minutes.  Students also began hitting D.R., cursing at him, and throwing change and other items at him from across the bus.  The only remedial action taken by school officials was to make one of the offending students write D.R. an apology.  School officials did not take any additional corrective action to protect D.R. from the anti-Semitic harassment he suffered and the harassment continued.

97.     Principal Boyle and Assistant Principal Peters's deliberate indifference to the severe and pervasive incidents of anti-Semitic harassment against D.R. gave rise to additional harassment.  In January 2009, students began calling D.R. "stupid Jew" and throwing coins at

him more frequently.  Moreover, the school bathrooms, the school cafeteria, textbooks, and desks were covered in swastikas.  D.R. reported these incidents to school officials, but they did not take any corrective action.

98.    D.R.'s parents, Jerrold and Lucinda Rosen, met with CMS Assistant Principal Robert Peters on at least five occasions to address the rampant anti-Semitic bullying of his two sons, A.R. and D.R.  Mr. Peters falsely told Mr. and Ms. Rosen that no one else had reported similar incidents of anti-Semitic harassment at CMS.  Neither Mr. Peters nor Principal Boyle took appropriate steps to address the severe and pervasive anti-Semitic discrimination and bullying that A.R. and D.R. were suffering.  Indeed, they did not even enforce the District's Student Code of Conduct, which prohibited such harassment.

99.    As a result of the rampant anti-Semitic discrimination in the School District, D.R. has suffered physical, psychological and emotional injuries.  D.R. experiences immense stress and anxiety and fears attending school.  He has become socially isolated and no longer participates in extracurricular activities for fear of being bullied by his peers.  In addition, D.R.'s grades have suffered significantly, particularly in eighth grade.

100.    The grossly inadequate response of school officials and employees at CMS and PBHS to the anti-Semitic discrimination and harassment that D.R. has endured effectively denied D.R. access to educational programs, activities and opportunities.

101.    Since D.R. has been a student in the School District, neither the District nor any school official conducted adequate education or training for students, teachers, administrators to address the discrimination and harassment of Jewish students.

## FIRST CLAIM FOR RELIEF

**Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*
Discrimination on the Basis of National Origin**

(Brought by T.E. Pursuant to 42 U.S.C. § 2000d *et seq.* against the School District and the
School Board)

102.    Plaintiffs incorporate by reference all preceding paragraphs.

103.    Upon information and belief, the School District, the School Board, and each

school within the District attended by T.E. are recipients of federal financial assistance.

104.    The acts and omissions of the School District and School Board, which include

acts and omissions of School District officials and employees, violated T.E.'s rights under Title

VI by discriminating against her on the basis of national origin (Jewish ancestry).

105.    School District officials had actual notice that harassment based on national origin

was so severe, pervasive, and objectively offensive that it created a hostile climate based on

national origin that deprived T.E. of access to educational programs, activities, and opportunities.

106.    The School District, and its policymakers, officials and other employees, exhibited

deliberate indifference to the harassment of T.E. based on national origin in violation of Title VI.

Through their unlawful deliberate indifference, the School District and School Board caused T.E.

to be subjected to the above-described national origin discrimination.

107.    The School District's and the School Board's violations of Title VI were the

actual, direct, and proximate cause of injuries suffered by T.E. as alleged.

108.    T.E. requests judgment in her favor against the School District and School Board

as set forth in the Prayer for Relief.

## SECOND CLAIM FOR RELIEF

### Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*
### Discrimination on the Basis of National Origin

(Brought by O.C. Pursuant to 42 U.S.C. § 2000d *et seq.* against the School District and the School Board)

109.    Plaintiffs incorporate by reference all preceding paragraphs.

110.    Upon information and belief, the School District, the School Board, and each school within the District attended by O.C. are recipients of federal financial assistance.

111.    The acts and omissions of the School District and School Board, which include acts and omissions of School District officials and employees, violated O.C.'s rights under Title VI by discriminating against her on the basis of national origin (Jewish ancestry).

112.    School District officials had actual notice that harassment based on national origin was so severe, pervasive, and objectively offensive that it created a hostile climate based on national origin that deprived O.C. of access to educational programs, activities, and opportunities.

113.    The School District, and its policymakers, officials and other employees, exhibited deliberate indifference to the harassment of O.C. based on national origin in violation of Title VI. Through their unlawful deliberate indifference, the School District and School Board caused O.C. to be subjected to the above-described national origin discrimination.

114.    The School District's and the School Board's violations of Title VI were the actual, direct, and proximate cause of injuries suffered by O.C. as alleged.

115.    O.C. requests judgment in her favor against the School District and School Board as set forth in the Prayer for Relief.

## THIRD CLAIM FOR RELIEF

**Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*
Discrimination on the Basis of National Origin**

(Brought by D.C. Pursuant to 42 U.S.C. § 2000d *et seq*. against the School District and the School Board)

116.    Plaintiffs incorporate by reference all preceding paragraphs.

117.    Upon information and belief, the School District, the School Board, and each school within the District attended by D.C. are recipients of federal financial assistance.

118.    The acts and omissions of the School District and School Board, which include acts and omissions of School District officials and employees, violated D.C.'s rights under Title VI by discriminating against him on the basis of national origin (Jewish ancestry).

119.    School District officials had actual notice that harassment based on national origin was so severe, pervasive, and objectively offensive that it created a hostile climate based on national origin that deprived D.C. of access to educational programs, activities, and opportunities.

120.    The School District, and its policymakers, officials and other employees, exhibited deliberate indifference to the harassment of D.C. based on national origin in violation of Title VI. Through their unlawful deliberate indifference, the School District and School Board caused D.C. to be subjected to the above-described national origin discrimination.

121.    The School District's and the School Board's violations of Title VI were the actual, direct, and proximate cause of injuries suffered by D.C. as alleged.

122.    D.C. requests judgment in his favor against the School District and School Board as set forth in the Prayer for Relief.

## FOURTH CLAIM FOR RELIEF

**Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*
Discrimination on the Basis of National Origin**

(Brought by A.R. Pursuant to 42 U.S.C. § 2000d *et seq.* against the School District and the
School Board)

123.    Plaintiffs incorporate by reference all preceding paragraphs.

124.    Upon information and belief, the School District, the School Board, and each
school within the District attended by A.R. are recipients of federal financial assistance.

125.    The acts and omissions of the School District and School Board, which include
acts and omissions of School District officials and employees, violated A.R.'s rights under Title
VI by discriminating against him on the basis of national origin (Jewish ancestry).

126.    School District officials had actual notice that harassment based on national origin
was so severe, pervasive, and objectively offensive that it created a hostile climate based on
national origin that deprived A.R. of access to educational programs, activities, and
opportunities.

127.    The School District, and its policymakers, officials and other employees, exhibited
deliberate indifference to the harassment of A.R. based on national origin in violation of Title VI.
Through their unlawful deliberate indifference, the School District and School Board caused
A.R. to be subjected to the above-described national origin discrimination.

128.    The School District's and the School Board's violations of Title VI were the
actual, direct, and proximate cause of injuries suffered by A.R. as alleged.

129.    A.R. requests judgment in his favor against the School District and School Board
as set forth in the Prayer for Relief.

## FIFTH CLAIM FOR RELIEF

### Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*
### Discrimination on the Basis of National Origin

(Brought by D.R. Pursuant to 42 U.S.C. § 2000d *et seq.* against the School District and the School Board)

130.    Plaintiffs incorporate by reference all preceding paragraphs.

131.    Upon information and belief, the School District, the School Board, and each school within the District attended by D.R. are recipients of federal financial assistance.

132.    The acts and omissions of the School District and School Board, which include acts and omissions of School District officials and employees, violated D.R.'s rights under Title VI by discriminating against him on the basis of national origin (Jewish ancestry).

133.    School District officials had actual notice that harassment based on national origin was so severe, pervasive, and objectively offensive that it created a hostile climate based on national origin that deprived D.R. of access to educational programs, activities, and opportunities.

134.    The School District, and its policymakers, officials and other employees, exhibited deliberate indifference to the harassment of D.R. based on national origin in violation of Title VI. Through their unlawful deliberate indifference, the School District and School Board caused D.R. to be subjected to the above-described national origin discrimination.

135.    The School District's and the School Board's violations of Title VI were the actual, direct, and proximate cause of injuries suffered by D.R. as alleged.

136.    D.R. requests judgment in his favor against the School District and School Board as set forth in the Prayer for Relief.

## SIXTH CLAIM FOR RELIEF

### U.S. Constitution Amendment XIV
### Denial of Equal Protection on the Basis of National Origin and/or Religion

(Brought by T.E. Pursuant to 42 U.S.C. § 1983 against the School District, the School Board, Mr. Steinberg in his official and individual capacities, Mr. Boyle in his official and individual capacities, and Mr. Fisch and Mr. Winter in their individual capacities.)

137.    Plaintiffs incorporate by reference all preceding paragraphs.

138.    The School District, the School Board, Mr. Steinberg, Mr. Boyle, Mr. Fisch, and Mr. Winter, acting under color of state law, have deprived T.E. of the rights, privileges, or immunities secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, in that Defendants, without justification, have intentionally discriminated against T.E. on the basis of her national origin and/or religion.

139.    Each of these Defendants had actual knowledge that harassment based on national origin and/or religion was so severe, pervasive, and objectively offensive that it created a hostile climate that deprived T.E. of access to educational programs, activities, and opportunities.

140.    The practices, policies, or customs of the School District, School Board, and their policymakers for responding to such harassment based on national origin and/or religion were so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that each of the Defendants named in this claim intended for the harassment to occur.

141.    The practices, policies, or customs of the School District, School Board, and their policymakers have substantially contributed to the creation of a pervasive anti-Semitic climate in the District and exacerbated the epidemic of anti-Semitic harassment in District schools.

142.    The School District, School Board, Superintendent Steinberg, and CMS Principal Boyle also failed to adequately train School District staff about policies prohibiting harassment and discrimination on the basis of national origin and/or religion.  These Defendants' failure to

35

train caused T.E. to be subjected to discrimination and harassment on the basis of national origin and/or religion.

143.    The violations of T.E.'s rights under the Fourteenth Amendment by each of the Defendants named in this claim were the actual, direct, and proximate cause of injuries suffered by T.E. as alleged.

144.    T.E. requests judgment in her favor against each of the Defendants named in this claim as set forth in the Prayer for Relief.

### SEVENTH CLAIM FOR RELIEF

**U.S. Constitution Amendment XIV**
**Denial of Equal Protection on the Basis of National Origin and/or Religion**

(Brought by O.C. Pursuant to 42 U.S.C. § 1983 against the School District, the School Board, Mr. Steinberg in his official capacity, Mr. Boyle in his official and individual capacities, and Mr. Winter in his individual capacity)

145.    Plaintiffs incorporate by reference all preceding paragraphs.

146.    The School District, the School Board, Mr. Steinberg, Mr. Boyle and Mr. Winter, acting under color of state law, have deprived O.C. of the rights, privileges, or immunities secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, in that Defendants, without justification, have intentionally discriminated against O.C on the basis of her national origin and/or religion.

147.    Each of these Defendants had actual knowledge that harassment based on national origin and/or religion was so severe, pervasive, and objectively offensive that it created a hostile climate that deprived O.C. of access to educational programs, activities, and opportunities.

148.    The practices, policies, or customs of the School District, School Board, and their policymakers for responding to such harassment based on national origin and/or religion were so

clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that each of the Defendants named in this claim intended for the harassment to occur.

149.    The practices, policies, or customs of the School District, School Board, and their policymakers have substantially contributed to the creation of a pervasive anti-Semitic climate in the District and exacerbated the epidemic of anti-Semitic harassment in District schools.

150.    The School District, School Board, Superintendent Steinberg, and CMS Principal Boyle also failed to adequately train School District staff about policies prohibiting harassment and discrimination on the basis of national origin and/or religion.  These Defendants' failure to train caused O.C. to be subjected to discrimination and harassment on the basis of national origin and/or religion.

151.    The violations of O.C.'s rights under the Fourteenth Amendment by each of the Defendants named in this claim were the actual, direct, and proximate cause of injuries suffered by O.C. as alleged.

152.    O.C. requests judgment in her favor against each of the Defendants named in this claim as set forth in the Prayer for Relief.

## EIGHTH CLAIM FOR RELIEF

### U.S. Constitution Amendment XIV
### Denial of Equal Protection on the Basis of National Origin and/or Religion

(Brought by D.C. Pursuant to 42 U.S.C. § 1983 against the School District, the School Board, and Mr. Steinberg, Mr. Hopmayer and Mr. Boyle in their official capacities)

153.    Plaintiffs incorporate by reference all preceding paragraphs.

154.    The School District, the School Board, Mr. Steinberg, Mr. Hopmayer and Mr. Boyle, acting under color of state law, have deprived D.C. of the rights, privileges, or immunities secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution,

in that Defendants, without justification, have intentionally discriminated against D.C. on the basis of his national origin and/or religion.

155.    Each of these Defendants had actual knowledge that harassment based on national origin and/or religion was so severe, pervasive, and objectively offensive that it created a hostile climate that deprived D.C. of access to educational programs, activities, and opportunities.

156.    The practices, policies, or customs of the School District, School Board, and their policymakers for responding to such harassment based on national origin and/or religion were so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that each of the Defendants named in this claim intended for the harassment to occur.

157.    The practices, policies, or customs of the School District, School Board, and their policymakers have substantially contributed to the creation of a pervasive anti-Semitic climate in the District and exacerbated the epidemic of anti-Semitic harassment in District schools.

158.    The School District, School Board, Superintendent Steinberg, PBHS Principal Hopmayer, and CMS Principal Boyle also failed to adequately train School District staff about policies prohibiting harassment and discrimination on the basis of national origin and/or religion. These Defendants' failure to train caused D.C. to be subjected to discrimination and harassment on the basis of national origin and/or religion.

159.    The violations of D.C.'s rights under the Fourteenth Amendment by each of the Defendants named in this claim were the actual, direct, and proximate cause of injuries suffered by D.C. as alleged.

160.    D.C. requests judgment in his favor against each of the Defendants named in this claim as set forth in the Prayer for Relief.

## NINTH CLAIM FOR RELIEF

### U.S. Constitution Amendment XIV
### Denial of Equal Protection on the Basis of National Origin and/or Religion

(Brought by A.R. Pursuant to 42 U.S.C. § 1983 against the School District, the School Board, Mr. Steinberg in his official capacity, Mr. Hopmayer in his official capacity, Mr. Boyle in his official and individual capacities, and Mr. Peters in his individual capacity)

161.   Plaintiffs incorporate by reference all preceding paragraphs.

162.   The School District, the School Board, Mr. Steinberg, Mr. Hopmayer, Mr. Boyle, and Mr. Peters, acting under color of state law, have deprived A.R. of the rights, privileges, or immunities secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, in that Defendants, without justification, have intentionally discriminated against A.R. on the basis of his national origin and/or religion.

163.   Each of these Defendants had actual knowledge that harassment based on national origin and/or religion was so severe, pervasive, and objectively offensive that it created a hostile climate that deprived A.R. of access to educational programs, activities, and opportunities.

164.   The practices, policies, or customs of the School District, School Board, and their policymakers for responding to such harassment based on national origin and/or religion were so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that each of the Defendants named in this claim intended for the harassment to occur.

165.   The practices, policies, or customs of the School District, School Board, and their policymakers have substantially contributed to the creation of a pervasive anti-Semitic climate in the District and exacerbated the epidemic of anti-Semitic harassment in District schools.

166.   The School District, School Board, Superintendent Steinberg, PBHS Principal Hopmayer, and CMS Principal Boyle also failed to adequately train School District staff about policies prohibiting harassment and discrimination on the basis of national origin and/or religion.

These Defendants' failure to train caused A.R. to be subjected to discrimination and harassment on the basis of national origin and/or religion.

167.   The violations of A.R.'s rights under the Fourteenth Amendment by each of the Defendants named in this claim were the actual, direct, and proximate cause of injuries suffered by A.R. as alleged.

168.   A.R. requests judgment in his favor against each of the Defendants named in this claim as set forth in the Prayer for Relief.

## TENTH CLAIM FOR RELIEF

### U.S. Constitution Amendment XIV
### Denial of Equal Protection on the Basis of National Origin and/or Religion

(Brought by D.R. Pursuant to 42 U.S.C. § 1983 against the School District, the School Board, Mr. Steinberg in his official capacity, Mr. Hopmayer in his official capacity, Mr. Boyle in his official and individual capacities, and Mr. Peters in his individual capacity)

169.   Plaintiffs incorporate by reference all preceding paragraphs.

170.   The School District, the School Board, Mr. Steinberg, Mr. Hopmayer, Mr. Boyle and Mr. Peters, acting under color of state law, have deprived D.R. of the rights, privileges, or immunities secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, in that Defendants, without justification, have intentionally discriminated against D.R. on the basis of his national origin and/or religion.

171.   Each of these Defendants had actual knowledge that harassment based on national origin and/or religion was so severe, pervasive, and objectively offensive that it created a hostile climate that deprived D.R. of access to educational programs, activities, and opportunities.

172.   The practices, policies, or customs of the School District, School Board, and their policymakers for responding to such harassment based on national origin and/or religion were so

clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that each of the Defendants named in this claim intended for the harassment to occur.

173.    The practices, policies, or customs of the School District, School Board, and their policymakers have substantially contributed to the creation of a pervasive anti-Semitic climate in the District and exacerbated the epidemic of anti-Semitic harassment in District schools.

174.    The School District, School Board, Superintendent Steinberg, PBHS Principal Hopmayer, and CMS Principal Boyle also failed to adequately train School District staff about policies prohibiting harassment and discrimination on the basis of national origin and/or religion. These Defendants' failure to train caused D.R. to be subjected to discrimination and harassment on the basis of national origin and/or religion.

175.    The violations of D.R.'s rights under the Fourteenth Amendment by each of the Defendants named in this claim were the actual, direct, and proximate cause of injuries suffered by D.R. as alleged.

176.    D.R. requests judgment in his favor against each of the Defendants named in this claim as set forth in the Prayer for Relief.

## ELEVENTH CLAIM FOR RELIEF

### New York Civil Rights Law §§ 40-c and 40-d
### Discrimination Based on National Origin and/or Creed

(Brought by T.E. Pursuant to the New York Civil Rights Law against the School District, the School Board, Mr. Steinberg in his official capacity, and Mr. Fisch, Mr. Boyle and Mr. Winter in their individual capacities)

177.    Plaintiffs incorporate by reference all preceding paragraphs.

178.    The acts and omissions described above by the School District, the School Board, Mr. Steinberg, Mr. Fisch, Mr. Boyle, and Mr. Winter subjected T.E. to discrimination based on national origin and/or creed in the exercise of her civil right to education under New York Law.

179.   Each of these Defendants' acts and omissions also aided and incited unlawful discrimination against T.E. by others based on national origin and/or creed in the exercise of her civil right to education under New York law.  The acts and omissions were undertaken recklessly and with the intent to engage in wrongful conduct.

180.   These violations of T.E.'s rights under the New York Civil Rights Law are the actual, direct, and proximate cause of injuries suffered by T.E. as alleged herein.

181.   Plaintiffs have complied with the procedural requirements of New York Civil Rights Law § 40-d by serving notice upon the State Attorney General at or before the commencement of the action.

182.   By this action, T.E. seeks to vindicate the public interest by enforcing fundamental state civil rights protections for students, including students who face discrimination and harassment at school based on national origin and/or creed.

183.   T.E. requests judgment in her favor against each of these Defendants as set forth in the Prayer for Relief.

**<u>TWELFTH CLAIM FOR RELIEF</u>**

**New York Civil Rights Law §§ 40-c and 40-d**
**Discrimination Based on National Origin and/or Creed**

(Brought by O.C. Pursuant to the New York Civil Rights Law against the School District, the School Board, Mr. Steinberg in his official capacity, and Mr. Boyle and Mr. Winter in their individual capacities)

184.   Plaintiffs incorporate by reference all preceding paragraphs.

185.   The acts and omissions described above by the School District, the School Board, Mr. Steinberg, Mr. Boyle and Mr. Winter subjected O.C. to discrimination based on national origin and/or creed in the exercise of her civil right to education under New York Law.

186.   Each of these Defendants' acts and omissions also aided and incited unlawful discrimination against O.C. by others based on national origin and/or creed in the exercise of her civil right to education under New York law.  The acts and omissions were undertaken recklessly and with the intent to engage in wrongful conduct.

187.   These violations of O.C.'s rights under the New York Civil Rights Law are the actual, direct, and proximate cause of injuries suffered by O.C. as alleged herein.

188.   Plaintiffs have complied with the procedural requirements of New York Civil Rights Law § 40-d by serving notice upon the State Attorney General at or before the commencement of the action.

189.   By this action, O.C. seeks to vindicate the public interest by enforcing fundamental state civil rights protections for students, including students who face discrimination and harassment at school based on national origin and/or creed.

190.   O.C. requests judgment in her favor against each of these Defendants as set forth in the Prayer for Relief.

### THIRTEENTH CLAIM FOR RELIEF

**New York Civil Rights Law §§ 40-c and 40-d**
**Discrimination Based on National Origin and/or Creed**

(Brought by D.C. Pursuant to the New York Civil Rights Law against the School District, the School Board, and Mr. Steinberg in his official capacity)

191.   Plaintiffs incorporate by reference all preceding paragraphs.

192.   The acts and omissions described above by the School District, the School Board, and Mr. Steinberg subjected D.C. to discrimination based on national origin and/or creed in the exercise of his civil right to education under New York Law.

193.   Each of these Defendants' acts and omissions also aided and incited unlawful discrimination against D.C. by others based on national origin and/or creed in the exercise of his

43

civil right to education under New York law.  The acts and omissions were undertaken recklessly and with the intent to engage in wrongful conduct.

194.    These violations of D.C.'s rights under the New York Civil Rights Law are the actual, direct, and proximate cause of injuries suffered by D.C. as alleged herein.

195.    Plaintiffs have complied with the procedural requirements of New York Civil Rights Law § 40-d by serving notice upon the State Attorney General at or before the commencement of the action.

196.    By this action, D.C. seeks to vindicate the public interest by enforcing fundamental state civil rights protections for students, including students who face discrimination and harassment at school based on national origin and/or creed.

197.    D.C. requests judgment in his favor against each of these Defendants as set forth in the Prayer for Relief.

## FOURTEENTH CLAIM FOR RELIEF

### New York Civil Rights Law §§ 40-c and 40-d
### Discrimination Based on National Origin and/or Creed

(Brought by A.R. Pursuant to the New York Civil Rights Law against the School District, the School Board, Mr. Steinberg in his official capacity, and Mr. Boyle and Mr. Peters in their individual capacities)

198.    Plaintiffs incorporate by reference all preceding paragraphs.

199.    The acts and omissions described above by the School District, the School Board, Mr. Steinberg, Mr. Boyle, and Mr. Peters subjected D.C. to discrimination based on national origin and/or creed in the exercise of his civil right to education under New York Law.

200.    Each of these Defendants' acts and omissions also aided and incited unlawful discrimination against A.R. by others based on national origin and/or creed in the exercise of his

civil right to education under New York law.  The acts and omissions were undertaken recklessly and with the intent to engage in wrongful conduct.

201.    These violations of A.R.'s rights under the New York Civil Rights Law are the actual, direct, and proximate cause of injuries suffered by A.R. as alleged herein.

202.    Plaintiffs have complied with the procedural requirements of New York Civil Rights Law § 40-d by serving notice upon the State Attorney General at or before the commencement of the action.

203.    By this action, A.R. seeks to vindicate the public interest by enforcing fundamental state civil rights protections for students, including students who face discrimination and harassment at school based on national origin and/or creed.

204.    A.R. requests judgment in his favor against each of these Defendants as set forth in the Prayer for Relief.

### FIFTEENTH CLAIM FOR RELIEF

**New York Civil Rights Law §§ 40-c and 40-d**
**Discrimination Based on National Origin and/or Creed**

(Brought by D.R. Pursuant to the New York Civil Rights Law against the School District, the School Board, Mr. Steinberg in his official capacity, and Mr. Boyle and Mr. Peters in their individual capacities)

205.    Plaintiffs incorporate by reference all preceding paragraphs.

206.    The acts and omissions described above by the School District, the School Board, Mr. Steinberg, Mr. Boyle, and Mr. Peters subjected D.R. to discrimination based on national origin and/or creed in the exercise of his civil right to education under New York Law.

207.    Each of these Defendants' acts and omissions also aided and incited unlawful discrimination against D.R. by others based on national origin and/or creed in the exercise of his

civil right to education under New York law.  The acts and omissions were undertaken recklessly and with the intent to engage in wrongful conduct.

208.   These violations of D.R.'s rights under the New York Civil Rights Law are the actual, direct, and proximate cause of injuries suffered by D.R. as alleged herein.

209.   Plaintiffs have complied with the procedural requirements of New York Civil Rights Law § 40-d by serving notice upon the State Attorney General at or before the commencement of the action.

210.   By this action, D.R. seeks to vindicate the public interest by enforcing fundamental state civil rights protections for students, including students who face discrimination and harassment at school based on national origin and/or creed.

211.   D.R. requests judgment in his favor against each of these Defendants as set forth in the Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs T.E., O.C., D.C., A.R., and D.R. request judgment in their favor and pray for relief against Defendants Pine Bush Central School District, Pine Bush Central School District Board of Education, Philip G. Steinberg, Aaron Hopmayer, John Boyle, Eric Winter, Steve Fisch, and Robert Peters as follows:

1.      For an order declaring that Defendants Pine Bush Central School District and Pine Bush Central School Board of Education have been deliberately indifferent to known acts of discrimination and harassment on the basis of national origin, and that the discrimination was so severe, pervasive, and objectively offensive that it effectively barred Plaintiffs access to an educational opportunity or benefit in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*;

2.      For an order declaring  that Defendants Pine Bush Central School District, Pine Bush Central School Board of Education, Philip G. Steinberg, Aaron Hopmayer, John Boyle, Eric Winter, Steve Fisch, and Robert Peters have been deliberately indifferent to known acts of discrimination and harassment on the basis of national origin and/or religion in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

3.      For an order declaring  that Pine Bush Central School District, Pine Bush Central School Board of Education, Philip G. Steinberg, Aaron Hopmayer, John Boyle, Eric Winter, Steve Fisch, and Robert Peters subjected Plaintiffs to discrimination while exercising their civil right to education under New York law in violation of New York Civil Rights Law §§ 40-c and 40-d;

4.      For an order granting all Plaintiffs nominal, compensatory, and punitive damages against Defendants Pine Bush Central School District and Pine Bush Central School District Board of Education for violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*;

5.      For an order granting  all Plaintiffs nominal, compensatory, and punitive damages against Defendants Pine Bush Central School District and Pine Bush Central School District Board of Education for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

6.      For an order granting T.E. nominal, compensatory, and punitive damages against Defendants Philip G. Steinberg, Steve Fisch, John Boyle, and Eric Winter for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

7.      For an order granting O.C. nominal, compensatory, and punitive damages against Defendants John Boyle and Eric Winter for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

8.      For an order granting A.R. nominal, compensatory, and punitive damages against Defendants John Boyle and Robert Peters, for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

9.      For an order granting D.R. nominal, compensatory, and punitive damages against Defendants John Boyle and Robert Peters for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

10.     For an order granting T.E. statutory damages against Defendants Steve Fisch, John Boyle, and Eric Winter for each violation of the New York Civil Rights Law §§ 40-c and 40-d.

11.     For an order granting O.C. statutory damages against Defendants John Boyle and Eric Winter for each violation of the New York Civil Rights Law §§ 40-c and 40-d;

12.     For an order granting A.R. statutory damages against Defendants John Boyle and Robert Peters for each violation of the New York Civil Rights Law §§ 40-c and 40-d;

13.     For an order granting D.R. statutory damages against Defendants John Boyle and Robert Peters for each violation of the New York Civil Rights Law §§ 40-c and 40-d;

14.     For a permanent injunction restraining and enjoining Defendants Pine Bush Central School District, Pine Bush Central School Board of Education, Philip G. Steinberg, Aaron Hopmayer, John Boyle, and Eric Winter from failing to adequately protect Plaintiffs O.C., D.C., A.R., D.R, and other similarly situated students, from verbal and physical harassment within the School District;

48

15.     For a permanent injunction ordering Defendants Pine Bush Central School District, Pine Bush Central School Board of Education, and Philip G. Steinberg to stop engaging in unconstitutional and unlawful acts, and to develop policies and procedures for ending any such unconstitutional and unlawful acts and the hostile and intolerant environment, including but not limited to the following:

> a.  Require Defendants Pine Bush Central School District, Pine Bush Central School Board of Education, and Philip G. Steinberg to implement mandatory and effective training programs for District faculty, staff, and students on issues relating to diversity, anti-Semitism, and national origin discrimination, and methods to intervene to stop students from harassing other students based on their religion and national origin;

> b.  Require Defendants Pine Bush Central School District, Pine Bush Central School Board of Education, and Philip G. Steinberg to adopt policies with specific guidelines for instructing teachers, security guards, bus drivers, hall monitors and administrators about how to address complaints by students who have been taunted, harassed, or discriminated against because of their religion and national origin;

> c.  Require Defendants Pine Bush Central School District, Pine Bush Central School Board of Education, Philip G. Steinberg, Aaron Hopmayer, John Boyle, and Eric Winter to conduct assemblies for all students in the School District addressing issues of diversity and tolerance, wherein students are instructed about laws prohibiting harassment and discrimination based on their religion and national origin;

> d.  Require Defendants Pine Bush Central School District, Pine Bush Central School Board of Education, Philip G. Steinberg, Aaron Hopmayer, John Boyle, and Eric Winter to assign a peer mediator and/or other staff member to District schools to provide active monitoring for the schools and to address instances of harassment and discrimination that arise at the schools;

> e.  Require Defendants Pine Bush Central School District, Pine Bush Central School Board of Education, and Philip G. Steinberg to maintain statistical data concerning each complaint of harassment based on religion and/or national origin made by a student or staff member, as well as the specific action district principals, assistant principals, teachers, security guards, bus drivers, and administrators took to resolve the complaint;

16.     For an order awarding Plaintiffs their expenses and costs, including reasonable attorneys' fees;

17.    For an order awarding each Plaintiff pre-judgment interest and post-judgment

interest; and

18.    For an order awarding such other and further relief as the Court deems just and

proper.

Dated:  October 19, 2012                    METH LAW OFFICES, P.C.


_s/Michael D. Meth_____
Michael D. Meth- mm9489
10 Moffatt Lane
Suite Two
Chester, NY 10918
(845) 469-9529
(845) 469-9989 (fax)
michael@methlaw.com

PUBLIC JUSTICE, P.C.
Adele P. Kimmel*
1825 K Street, NW
Suite 200
Washington, DC 20006
(202) 797-8600
(202) 232-7203 (fax)
akimmel@publicjustice.net

*Motion for admission _pro hac vice_ forthcoming

**ATTORNEYS FOR PLAINTIFFS**