UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHERRI ECCLESTON, et al.,

                         Plaintiffs,

           - against -

PINE BUSH CENTRAL SCHOOL DISTRICT,

                       Defendant.

12 Civ. 2303(KMK)(PED)

**MEMORANDUM
AND ORDER**

## I. INTRODUCTION

By motion dated October 19, 2012, plaintiffs Sherri Eccleston, individually and as a parent of T.E., David Cohen, individually and as a parent of O.C. and D.C., and Jerrold Rosen, individually and as a parent of A.R. and O.R. (collectively, "Plaintiffs"), seek leave to file an amended complaint. (Dkt. 11.) Defendant Pine Bush Central School District ("Defendant" or the "School District") has consented to the proposed amendments except to the extent that Plaintiffs seek to add individual-capacity claims against certain School District employees. No party has requested oral argument. This matter comes before me pursuant to an Order of Reference for general pre-trial purposes dated September 18, 2012. (Dkt. 7.) For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

## II. BACKGROUND

### A.    Claims Alleged

The complaint alleges violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI"); 42 U.S.C. § 1983; and common law.[1] (See generally Compl. (Dkt.

---

[1] Specifically, the claims allege: (1) violations of Title VI, (Compl. ¶¶ 94-100, 118-24, 136-42, 154-60, 172-78 (Dkt. 1)); (2) violations of § 1983 for the deprivation of Plaintiffs' "substantive due process rights under the Equal Protection Clause of the Fourteenth Amendment," (id. ¶¶ 106,

1).)  In short, Plaintiffs allege that the School District failed to prevent or remedy anti-Semitic discrimination, harassment, and bullying by classmates of T.E., O.C., D.C., A.R., and D.R.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiffs now seek leave to amend the complaint by, *inter alia*, adding individual-capacity claims against several new defendants.[2]  The proposed individual-capacity defendants include: Philip G. Steinberg, Superintendent of Pine Bush Central School District ("Steinberg"); John Boyle, Principal of Crispell Middle School ("Boyle"); Eric Winter, Principal of Pine Bush Elementary School and former Assistant Principal of Crispell Middle School ("Winter"); Steve Fisch, former Principal of Pine Bush Elementary School ("Fisch"); and Robert Peters, former Assistant Principal of Crispell Middle School ("Peters").  (See Proposed 1st Am. Compl. ("PFAC") (Dkt. 11, at Ex. A).) Defendant opposes these individual-capacity claims on futility grounds.

## B.    Procedural History

The complaint was filed on March 28, 2012 and alleges claims against the School District only.  (Dkt. 1; see also supra n.1.)  On October 10, 2012, Plaintiffs were granted leave to file a motion to amend the complaint in order to name additional defendants.  (Dkt. 10.)  The motion was timely filed on October 19, 2012 and a copy of the proposed first amended complaint

---

130, 148, 166, 184); (3) negligent infliction of emotional distress, (id. ¶¶ 113-17, 131-35, 149-53, 167-71, 184-88); and (4) breach of the duty to protect, (id. ¶¶ 107-112).

[2] Among other things, the proposed pleading also: (1) adds Pine Bush Central School District Board of Education and Aaron Hopmayer, Principal of Pine Bush High School, in his official capacity, as defendants; (2) specifically alleges discrimination on the basis of national origin with respect to the Title VI claims; (3) removes "substantive due process" language from the § 1983 claims and alleges only violations of the Equal Protection Clause; (4) adds new state law claims for violations of N.Y. Civ. Rights Law §§ 40-c and 40-d ("NYCRL"); (5) modifies the relief requested; and (6) revises certain factual allegations.  (See generally Proposed 1st Am. Compl. ("PFAC") (Dkt. 11, at Ex. A).)  Defendant has consented to the amendments except to the extent addressed by this Order.  (See Def.'s Oct. 9, 2012 Letter (Dkt. 11, at Ex. B).)

("PFAC") was attached.

Defendant's memorandum in opposition to Plaintiffs' motion was timely filed on October 26, 2012.  Defendant argues that: (1) the proposed § 1983 and NYCRL claims against Steinberg, Fisch, Winter, Boyle, and Peters, as defendants in their individual capacities, are futile because Plaintiffs fail to sufficiently allege the personal involvement of these individuals; and (2) the proposed § 1983 and NYCRL claims against Steinberg, Fisch, Winter, Boyle, and Peters are futile because those claims are subsumed by the parallel Title VI claims raised.  (See generally Defs.' [sic] Mem. of Law in Opp'n to Pls.' Notice of Mot. to Amend Compl. ("Def.'s Mem.") (Dkt. 12).)

Plaintiffs' reply brief was timely filed on November 7, 2012 and argues, inter alia, that: (1) Defendant mischaracterizes the applicable legal standard for student-on-student harassment in the context of a deliberate indifference claim; (2) Defendant mischaracterizes the law involving Title VI and § 1983; and (3) the PFAC sufficiently pleads the § 1983 and NYCRL claims. (See generally Pls.' Reply to Def.'s Mem. of Law in Opp'n to Mot. to Amend Compl. ("Pls.' Reply") (Dkt. 15).)

## III. DISCUSSION

### A.    Legal Standards

#### 1.    *Motion to Amend Standard*

Leave to amend a pleading should be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).

> [T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason . . . is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

3

Foman v. Davis, 371 U.S. 178, 182 (1962).  Accordingly, leave "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (citing Foman, 371 U.S. at 182).

     "One appropriate basis for evaluating the productivity of a proposed amendment lies in the relative futility of accepting the proposed amended complaint.  If the proposed amendment would not survive a motion to dismiss, then it is appropriately denied as futile." Talley v. Brentwood Union Free Sch. Dist., 728 F. Supp. 2d 226, 231-32 (E.D.N.Y. 2010) (internal quotation marks and citations omitted).

## 2. *Motion to Dismiss Standard*

     "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (internal quotation marks and citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

"While Federal Rule of Civil Procedure 8 'marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" Porrazzo v. Bumble Bee Foods, LLC, 822 F. Supp. 2d 406, 410 (S.D.N.Y. 2011) (quoting Iqbal, 556 U.S. at 678-79).

> In considering whether a complaint states a claim upon which relief can be granted, the court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determine whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Id.

### 3.   *42 U.S.C. § 1983*

Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution

of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). Accordingly, "[t]o state a claim of discrimination under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against her on the basis of her membership in a protected class." Humphrey v. Cnty. of Nassau, No. 06 Civ. 3682 (JFB)(AKT), 2009 WL 875534, at *17 (E.D.N.Y. Mar. 30, 2009) (citing Linder v. City of New York, 263 F. Supp. 2d 585, 592 (E.D.N.Y. 2003)); see also DiStiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012) (quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977)) ("To prevail on a § 1983 claim of race discrimination in violation of equal protection, the law requires a plaintiff to prove the defendant's underlying 'racially discriminatory intent or purpose.'"); Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 139-40 (2d Cir. 1999) ("In order for [a] plaintiff to prevail on [a] claim[ ] for violation of the Fourteenth Amendment's Equal Protection Clause . . . proof of racially discriminatory intent is required.").

It is also "'well settled'" that the "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)). As such, "the doctrine of respondeat superior . . . does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003); see also Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

6

Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### 4. *New York Civil Rights Law*

NYCRL § 40-c(2) states that:

> No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

N.Y. Civ. Rights Law § 40-c(2). NYCRL § 40-d states that:

> Any person who shall violate any of the provisions of the foregoing section . . . or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside. In addition, any person who shall violate any of the provisions of the foregoing section shall be deemed guilty of a class A misdemeanor. At or before the commencement of any action under this section, notice thereof shall be served upon the attorney general.

Id. § 40-d.

## B. **Application**

### 1. *Title VI Subsumation*

Defendant argues that the proposed § 1983 claims are futile because such claims "are subsumed by [Plaintiffs'] Title VI claims." (Def.'s Mem., at 9.) In support of this argument, Defendant quotes from DT v. Somers Central School District, 588 F. Supp. 2d 485, 498 (S.D.N.Y. 2008). (Id.) Plaintiffs contend that Defendant's argument is legally inaccurate in light of the Supreme Court's more recent decision in Fitzgerald v. Barnstable School Committee, 555 U.S. 246 (2009). (See Pls.' Reply, at 9.) I agree with Plaintiffs.

7

In <u>Somers</u>, the district court relied upon <u>Bruneau v. South Kortright Central School District</u>, 163 F.3d 749 (2d Cir. 1998) to hold that the plaintiffs' § 1983 equal protection claim was "subsumed" by their Title VI claim.  588 F. Supp. 2d at 498.  Subsequent to this decision, however, the Supreme Court abrogated <u>Bruneau</u> and held that § 1983 claims are *not* subsumed by parallel Title IX claims.  <u>See</u> <u>Fitzgerald</u>, 555 U.S. at 251-59.  It is clear that Title IX and Title VI are to be interpreted similarly.  <u>See id.</u> at 258-59; <u>see also, e.g.</u>, <u>Somers</u>, 588 F. Supp. 2d at 493 n.12 (quoting <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274, 286 (1998)) ("Title VI is 'parallel to Title IX except that it prohibits race discrimination, not sex discrimination, and applies to all programs receiving federal funds.").[3]  Accordingly, Defendant's reliance upon <u>Somers</u> is untenable.  Plaintiffs' proposed § 1983 claims are not futile on this basis.  <u>See also, e.g.</u>, <u>TC v. Valley Cent. Sch. Dist.</u>, 777 F. Supp. 2d 577, 597 (S.D.N.Y. 2011), <u>mot. for recons. granted on other grounds</u>, 2011 WL 3480389 (S.D.N.Y. 2011) (concluding that, in light of <u>Fitzgerald</u>, "Title VI does not preclude a section 1983 claim").

### 2.   *Personal Involvement*

Defendant argues that, to the extent that the PFAC alleges § 1983 and NYCRL claims against Steinberg, Fisch, Winter, Boyle, and Peters in their individual capacities, those claims are futile because Plaintiffs fail to sufficiently allege either the direct involvement of, or the deliberate indifference of, those individuals to the alleged student-on-student harassment.  (<u>See</u> Def.'s Mem., at 3-9.)  Specifically, Defendant contends that personal involvement has not been shown because the pleading: (1) does not contain allegations that the individuals "made

---

[3] Title VI prohibits "program[s] or activit[ies that] receiv[e] Federal financial assistance" from discriminating on the basis of "race, color, or national origin."  42 U.S.C. § 2000d.  Title IX of the Education Amendments of 1972 prohibits "education program[s] or activit[ies that] receiv[e] Federal financial assistance" from discriminating "on the basis of sex."  20 U.S.C. § 1681(a).

religiously-based comments;" (2) does not contain allegations that the individuals "referenced plaintiffs [*sic*] religion;" (3) does not contain allegations that the individuals "treated plaintiffs differently from individuals outside of their protected class;" (4) does not contain allegations that the individuals "harbored religious-animus towards plaintiffs or effectively caused subsequent harassment;" and (5) contains insufficiently pled allegations that the individuals "failed to train staff and created a 'practice, policy, or custom' of contributing to the pervasive anti-Semitic climate in the District." (Id. at 3.) Plaintiffs contend that the personal involvement and deliberate indifference of Steinberg, Fisch, Winter, Boyle, and Peters have been sufficiently pled because the PFAC alleges that Plaintiffs "and/or their parents reported most of the incidents of harassment to the Individual Defendants," and alleges "that each of the Individual Defendants took little or no action in response to Plaintiffs' complaints." (Pls.' Reply, at 4.) I agree in part with each party.

Although an Equal Protection Clause claim under § 1983 requires proof of discriminatory intent or purpose, the Second Circuit has clearly held that such claims "can be based on the 'deliberate indifference' of school boards, administrators, and teachers to invidious 'harassment, in the school environment, of a student by other children or parents.'" DiStiso, 691 F.3d at 241-42 (quoting Gant, 195 F.3d at 140); see also, e.g., Preston v. Hilton Cent. Sch. Dist., No. 11 Civ. 620L, 2012 WL 2829452, at *7 (W.D.N.Y. July 11, 2012) (in the context of student-on-student harassment, "[c]ourts have repeatedly held that teachers, administrators, and boards of education can be held liable under the Fourteenth Amendment if they have been deliberately indifferent to discriminatory harassment of a student at school by other children"). "This is because, in cases of alleged student-on-student harassment, only deliberate indifference to such harassment can be viewed as discrimination by school officials themselves." Gant, 195 F.3d at 140.

> Thus, to succeed on a § 1983 equal protection claim of deliberate indifference to student-on-student . . . harassment, well established law requires a plaintiff to prove (1) that the child in question was in fact harassed by other students based on his [membership in a protected class]; (2) that such . . . harassment was "actually known" to the defendant school official; and (3) that the defendant's response to such harassment was so "clearly unreasonable in light of the known circumstances" as to give rise to a reasonable inference that the defendant himself intended for the harassment to occur.

DiStiso, 691 F.3d at 241 (citing Gant, 195 F.3d at 140, 141 & n.6); accord Karlen v. Landon, No. 11 Civ. 4011, 2012 WL 5861763, at *1 (2d Cir. Nov. 20, 2012).  Notwithstanding, this standard for "deliberate indifference 'is not a mere "reasonableness" standard that transforms every school disciplinary decision into a jury question.'" DiStiso, 691 F.3d at 241 (quoting Gant, 195 F.3d at 141).  "Rather, consistent with the well established requirement that an equal protection violation be intentional or purposive, the Gant elements work together to ensure that '[t]he ultimate inquiry' in a deliberate indifference case 'is one of . . . discriminatory purpose on the part of the defendant himself.'" Id. (quoting Gant, 195 F.3d at 141 and citing Arlington Heights, 429 U.S. at 265).  With these principles in mind, I turn to the claims raised by the individual plaintiffs in the PFAC with respect to each proposed individual defendant at issue.

### i.   T.E.'s Proposed § 1983 Claims

T.E. attended the elementary school from September 2005 through June 2009, and the middle school from September 2009 through January 2012.  (PFAC ¶ 26.) She raises § 1983

claims against Steinberg,[4] Fisch,[5] Winter,[6] and Boyle[7] in the PFAC.  The factual allegations

raised in that pleading with respect to T.E. include the following:

- In fifth grade, T.E. witnessed two students drawing swastikas in their planners.  (Id. ¶ 30.)  T.E.'s mother met with Fisch the next day and reported the incident to him.  (Id.)  Fisch "took no action to either discipline the students or to make sure they understood why swastikas are particularly offensive to Jewish students."  (Id.)

- In fifth grade, one of the students who had drawn a swastika in a planner called T.E. a "Jew" on the school bus and showed her and her mother the middle finger.  (Id. ¶ 31.)

- In fifth grade, T.E. witnessed the playground slide engraved with a swastika.  (Id. ¶ 32.)  The next day, T.E.'s mother reported it to Fisch and reminded him of the other incidents.  (Id.)  At some point, T.E.'s mother "also told" Steinberg "about the swastika engraved on the slide and all of the other anti-Semitism T.E. had witnessed or endured" at the elementary school.  (Id.)  Neither Fisch nor Steinberg took "appropriate action" and the swastika remained on the slide for over a year.  (Id.)

- In January 2011, when T.E. was in seventh grade, a student told her "she should be burned" during a lesson about the Holocaust.  (Id. ¶ 45.)  On April 11, 2011, another classmate called her a "Jew" and "Crispy" and told her she should be burned.  (Id.)  T.E.'s mother reported these incidents to Winter, who "took no action."  (Id.)

- Throughout the spring semester of T.E.'s seventh grade year, "students began using the word 'Jew' as an insult and to mock Jewish students."  (Id. ¶ 46.)  T.E. reported the incidents to Winter, who "took no action."  (Id.)

- On May 31, 2011, "a student who had made comments about 'White Power' sat next to T.E. on the bus and would not let T.E. out of the seat when she asked to move."  (Id. ¶ 41.)  T.E. sent a text message to her mother, who immediately called Winter.  (Id.)  Winter contacted the bus company, who

---

[4] The PFAC alleges that Steinberg has been the Superintendent for the School District since August 2008.  (Id. ¶ 20.)

[5] The PFAC alleges that Fisch was the Principal of the elementary school from September 1991 through July 2011.  (PFAC ¶ 23.)

[6] The PFAC alleges that Winter was the Assistant Principal of the middle school from September 2010 through June 2011, and has been the Principal of the elementary school since July 2011.  (PFAC ¶ 22.)

[7] The PFAC alleges that Boyle has been the Principal of the middle school since September 2006.  (PFAC ¶ 21.)

contacted the bus driver via radio transmission which was overheard by students on the bus. (Id. ¶ 42.) The driver moved T.E. to a different seat and a student threatened T.E. with violence. (Id.) T.E.'s mother called Winter again to complain about the bus company's actions and the student's threat to T.E. (Id. ¶ 43.) T.E.'s mother requested that the school provide an alternative form of transportation for T.E. (Id.) "Winter took no action," and T.E. stopped taking the bus from this point on. (Id.)

- On January 23, 2012, when T.E. was in eighth grade, a student told an anti-Semitic joke in front of T.E. (Id. ¶ 53.) T.E.'s mother complained to school officials about the joke and about a swastika that had been drawn in the girls' bathroom. (Id.) The next day, Boyle spoke to T.E. about those matters and informed T.E.'s mother that when he checked the bathroom, he did not see a swastika. (Id.)

- At some point when T.E. was in middle school, T.E., T.E.'s mother, O.C., and O.C.'s father, "attended a meeting with Superintendent Steinberg . . . to discuss the harassment and the possibility of bussing T.E. and O.C. to Circleville Middle School . . . . , another middle school within the District." (Id. ¶ 47.) At this meeting, "Steinberg promised that he would institute changes within the District, including better communication with his staff to ensure that it was more informed about the incidents of discrimination and harassment," and "that he would look into bussing T.E. and O.C." to a different middle school. (Id. ¶ 48.) Steinberg then denied the alternative bussing request. (Id.)

Defendant argues that the allegations regarding T.E. are insufficient to establish that either Steinberg, Fisch, Boyle or Winter were: (1) "directly involved in any of the alleged student-on-student harassment" or (2) "deliberately indifferent to it." (See Def.'s Mem., at 4-7.)

Defendant specifically argues that the PFAC fails to allege that Steinberg was a witness to the incidents and fails to identify which incidents were specifically communicated to him. (See id. at 4.) I disagree. A reasonable inference can be drawn that T.E.'s mother communicated the three elementary school incidents described above to Steinberg. Additionally, the PFAC clearly alleges that some Plaintiffs directly communicated to Steinberg about incidents that occurred in the middle school. Such direct reporting is sufficient to give Steinberg actual knowledge of these incidents. See DiStiso, 691 F.3d at 243-44 (where plaintiff's evidence included testimony that mother spoke to defendant in person on at least two occasions, and at

12

least once in writing, regarding classmates' usage of racial epithets toward her son, a triable

issue of fact existed as to defendant's actual knowledge of the alleged racially harassing

behavior).  Accordingly, Steinberg need not have been an eyewitness to any incident, nor have

participated directly in the event, in order to sufficiently plead Gant's second element.

Defendant also specifically argues that the PFAC fails to allege that Steinberg was

deliberately indifferent to any harassment because: (1) it fails to "demonstrate that Mr. Steinberg

harbored a discriminatory motive or effectively caused plaintiff T.E. to suffer discrimination,"

and (2) its allegation that "Steinberg did not take 'appropriate action' when made aware of

incidents of anti-Semitism does not sufficiently allege deliberate indifference."  (Def.'s Mem., at

4 (quoting PFAC ¶ 32).)  I disagree.  First, as discussed above, direct evidence of an individual's

discriminatory motive is unnecessary in the context of a case alleging a defendant's deliberate

indifference to student-on-student harassment.  Although a § 1983 Equal Protection Clause claim

requires proof of a defendant's discriminatory intent or purpose, that intent or purpose may be

reasonably inferred from the facts relevant to Gant's three elements.  See DiStiso, 691 F.3d at

241; Gant, 195 F.3d at 140-41.  Second, although the term "appropriate" in the PFAC may be

conclusory and therefore disregarded, see Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)

(quoting Iqbal, 556 U.S. at 678) ("[A]lthough 'a court must accept as true all of the allegations

contained in a complaint,' that 'tenant' 'is inapplicable to legal conclusions,' and '[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice.'"), the remaining allegations state that Steinberg took *no* action after he was directly

informed of incidents.  This is sufficient to plead the third element of Gant and allege that his

response was clearly unreasonable.  See DiStiso, 691 F.3d at 245 (evidence presented could

permit a reasonable jury to find that principal's response was clearly unreasonable where

principal had actual knowledge of student-on-student racial harassment, yet "did nothing in response"). Accordingly, the proposed § 1983 claim by T.E. against Steinberg is not futile.

With respect to Fisch, Defendant specifically argues that the PFAC fails to allege that Fisch was a witness to the incidents or was otherwise aware of them. (See Def.'s Mem., at 5.) I disagree. First, the PFAC clearly alleges that T.E.'s mother directly communicated with Fisch about these incidents. As discussed above, this is sufficient to establish Fisch's actual knowledge. See DiStiso, 691 F.3d at 243-44. Further factual allegations regarding Fisch's own observations are therefore unnecessary. Additionally, I note that the PFAC clearly alleges that Fisch took no action after he was directly informed of the incidents. As discussed above, this is sufficient to plead that his response was clearly unreasonable. See id. at 245. Accordingly, T.E.'s proposed § 1983 claim against Fisch is not futile.

With respect to Winter, Defendant specifically argues that the PFAC fails to allege that: (1) Winter had actual knowledge of incidents, (2) Winter knew that the incidents were motivated by discriminatory purposes, or (3) any complaints made to Winter were made contemporaneously to the incidents. (See Def.'s Mem., at 6.) I disagree. The PFAC adequately alleges that T.E.'s mother complained to him about students calling T.E. a "Jew" and "Crispy," and telling her "she should be burned." A reasonable inference may also be drawn from the allegations that the complaints made to Winter were made contemporaneously with the incidents. As discussed above, such direct reporting is sufficient to plead Winter's actual knowledge of the incidents. See DiStiso, 691 F.3d at 243-44. Moreover, even if the "bus incident," (see Def.'s Mem., at 6), does not expressly indicate a discriminatory motive or purpose, the PFAC alleges that students mocked T.E. throughout seventh grade by calling her a "Jew," and that this was directly reported to Winter. These incidents clearly indicate a

14

discriminatory motive based on T.E.'s religion and ethnicity. The PFAC also alleges that Winter took no action in response to the repeated complaints. As discussed above, this is sufficient to plead his deliberate indifference to such student-on-student harassment. See DiStiso, 691 F.3d at 245. Accordingly, T.E.'s proposed § 1983 claim against Winter is not futile.[8]

With respect to Boyle, Defendant specifically argues that the PFAC fails to allege that Boyle was aware of any incident involving T.E. or that he failed to respond. (See Def.'s Mem., at 7.) Plaintiffs contend that the PFAC sufficiently alleges that Boyle had either actual knowledge of the incidents, or, where "parents reported the anti-Semitic harassment to an assistant principal" at the middle school, "it is reasonable to infer that Principal Boyle had actual knowledge of at least some of these meetings." (Pls.' Reply, at 8.) I agree with Defendant.

First, Plaintiffs' contention that it is reasonable to infer Boyle's actual knowledge from the alleged fact that incidents were directly reported to middle school assistant principals relies upon a *respondeat superior* theory of liability. However, it is clear that "the doctrine of respondeat superior standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." Hayut, 352 F.3d at 753. The PFAC does not contain factual allegations from which one may reasonably infer that Boyle knew about the substance of these meetings or otherwise about those incidents.

---

[8] To the extent Defendant also argues that the PFAC is insufficient with respect to Fisch and Winter because it does not allege conduct that is "so 'severe, pervasive and objectively offensive' to deny T.E. of educational benefits," or because the incidents described do not constitute student-on-student harassment, (Def.'s Mem., at 5 (quoting HB v. Monroe Woodbury Cent. Sch. Dist., No. 11 Civ. 5881 (CS), 2012 WL 4477552, at *15 (S.D.N.Y. Sept. 27, 2012))), those arguments are unpersuasive. Defendant's quotation is taken from a part of a decision that analyzed a Title VI claim–not a § 1983 equal protection claim. See Monroe Woodbury, 2012 WL 4477552, at *14-15. In any event, the PFAC alleges conduct which, if true, would raise a triable issue of fact with respect to the severity required by Gant's first element. See DiStiso, 691 F.3d at 242-43; Gant, 195 F.3d at 140.

Second, although the PFAC alleges several other incidents of student-on-student harassment involving T.E., those allegations do not state that any proposed individual defendant was ever notified about them or that the individuals otherwise had actual knowledge of the incidents. (See PFAC ¶¶ 34-36, 39-40, 49, 51, 55.) The PFAC alleges only one instance–involving an anti-Semitic joke and a swastika in the bathroom–where Boyle was directly notified. However, it fails to allege facts from which one may plausibly infer that Boyle's response was clearly unreasonable. Specifically, it does not allege that Boyle failed to take any action with respect to the student's joke, or that his response was otherwise unreasonable. Nor does it allege that Boyle's response to the swastika in the bathroom was clearly unreasonable. Rather, it alleges that, although T.E. told Boyle where it was located, Boyle told T.E.'s mother that it was not there when he looked for it. At most, this allegation establishes Boyle's negligence in locating the mark. However, as discussed above, the standard for "deliberate indifference 'is not a mere "reasonableness" standard.'" DiStiso, 691 F.3d at 241 (quoting Gant, 195 F.3d at 141). Without more, the PFAC fails to adequately plead facts that show that Boyle's response was intentional or purposeful. T.E.'s proposed § 1983 claim against Boyle is futile.

Accordingly, T.E. is granted leave to interpose individual-capacity claims against Steinberg, Fisch, and Winter. Leave is denied as to Boyle.

### ii.      O.C.'s Proposed § 1983 Claims

O.C. attended the middle school from September 2009 through June 2012. She began her ninth grade year in the high school in September 2012. (PFAC ¶ 59.) She raises § 1983 claims against Steinberg, Winter, and Boyle in the PFAC. The factual allegations raised in that pleading with respect to O.C. include the following:

16

- In seventh grade, a student called O.C. a "dirty disgusting Jew," the student and O.C. screamed at each other, and they were both sent to Winter's office. (Id. ¶ 65.) Winter let each student "talk out their differences" and the student apologized to O.C. (Id.) "Winter took no further action and students continued to harass O.C. [*sic*], saying on several subsequent occasions: 'You're such a stupid Jew!'" (Id.)
- In seventh grade, O.C. witnessed re-appearing swastikas on her English class desk. O.C. reported the marks to Winter, who had them removed. (Id. ¶ 68.) However, "[a]s soon as Mr. Winter had the swastika removed, a new one would appear in its place." (Id.)
- During seventh grade, someone drew a swastika next to O.C.'s photograph in another student's yearbook. (Id.) "Mr. Winter responded by blocking out the swastika from the yearbook, but took no further remedial action." (Id.)
- In eighth grade, O.C. witnessed a student hold back the arms of another student so that a third student could draw a swastika on her face. (Id. ¶ 66.) O.C. slapped one of the offending students, which sent her to Boyle's office. (Id.) "Boyle did not understand why [the student]'s actions were offensive to all Jewish students." (Id.) "The fact that Mr. Boyle did not comprehend how this act could offend any other Jewish student makes clear that the School District failed to educate and train employees in the highest levels of leadership about how to respond to anti-Semitic discrimination and harassment." (Id.)
- At some point during middle school, students constructed a Hasidic Jew and a swastika out of pipe cleaners and told T.E. that the swastika would be given to O.C. (Id. ¶ 44.) "Mr. Winter witnessed the incident, but his only response was to give [the student] in-school suspension." (Id.)
- At some point during middle school, O.C., O.C.'s father, T.E., and T.E.'s mother "attended a meeting with Superintendent Steinberg . . . to discuss the harassment and the possibility of bussing T.E. and O.C. to Circleville Middle School . . . ., another middle school within the District." (Id. ¶ 47.) At this meeting, "Steinberg promised that he would institute changes within the District, including better communication with his staff to ensure that it was more informed about the incidents of discrimination and harassment," and "that he would look into bussing T.E. and O.C." to a different middle school. (Id. ¶ 48.) Steinberg then denied the alternative bussing request. (Id.)

Defendant argues that the allegations regarding O.C. are insufficient to establish that either Steinberg, Winter, or Boyle were: (1) "directly involved in any of the alleged student-on-student harassment" or (2) "deliberately indifferent to it." (See Def.'s Mem., at 4-7.)

Defendant specifically argues that the PFAC fails to allege that Steinberg was a witness to the incidents and fails to identify which incidents were specifically communicated to him.

17

(See id. at 4.)  I disagree.   A reasonable inference may be drawn that at least some of the harassment O.C. experienced was directly communicated to Steinberg.  Although the PFAC does not identify which specific incidents were discussed, the PFAC alleges that O.C. and her father met with Steinberg "to discuss the harassment" that O.C. experienced.  (PFAC ¶ 47.)  As discussed above, such direct reporting is sufficient to give him actual knowledge that O.C. was being harassed on the basis of her religion and ethnicity.  See DiStiso, 691 F.3d at 243-44.  Further, as noted above, the PFAC alleges that Steinberg took *no* action after he was directly informed that T.E. and O.C. were being harassed by other students.  Such a lack of response is sufficient to plead a clearly unreasonable response for purposes of Gant.  See id. at 245.  Accordingly, O.C.'s proposed § 1983 claim against Steinberg is not futile.

With respect to Winter, Defendant specifically argues that, to the extent Winter was aware of any harassment directed at O.C., the PFAC's allegations indicate that he responded to it.  (See Def.'s Mem., at 6-7.)  I disagree.

The PFAC adequately alleges that Winter had actual knowledge of the incidents involving the student calling O.C. a "dirty disgusting Jew," the swastikas on O.C.'s desk and next to her yearbook photo, and the pipe cleaners.[9]  However, it also alleges that Winter responded in some way to them.  Specifically, it alleges that: (1) his efforts resulted in an apology by the student who called O.C. the name,[10] (2) he had the swastikas removed from

_____

[9] Although the PFAC alleges several other incidents of student-on-student harassment involving O.C., those allegations do not state that a proposed new individual defendant was ever notified about them or that individuals otherwise had actual knowledge of the incidents.  (See PFAC ¶¶ 62-65, 67, 69.)

[10] To the extent Plaintiffs allege that Winter's response to this incident was "grossly inadequate," (PFAC ¶ 71), because he "took no further action and students continued to harass O.C." with additional name-calling, (id. ¶ 65), the PFAC does not allege that Winter was ever

O.C.'s desk, (3) he blocked out the swastika in the yearbook, and (4) he gave a student in-school suspension for the pipe cleaner incident.  The PFAC's allegation that his responses were "grossly inadequate" is conclusory and therefore disregarded.  See Harris, 572 F.3d at 72.  However, the remaining allegations, when viewed as a whole, are sufficient to permit a reasonable inference that Winter's responses were clearly unreasonable for purposes of Gant.  For instance, there are numerous instances in the PFAC where it is alleged that swastikas appeared on school property and that these marks were directed at O.C.  Such repetitive occurrences may allow a reasonable inference to be drawn that Winter's responses to the conduct were clearly erroneous.  C.f. Gant, 195 F.3d at 142 (failure to take "direct responsive action" to single instance of race-based name-calling does not constitute deliberate indifference); Monroe Woodbury, 2012 WL 4477552, at *15 (deliberate indifference not established where, even assuming actual knowledge of defendant, pleading alleges only one instance of discriminatory conduct).  Accordingly, O.C.'s proposed § 1983 claim against Winter is not futile.

With respect to Boyle, Defendant specifically argues that the PFAC fails to allege that Boyle was aware of any incident involving O.C. or that he failed to respond.  (See Def.'s Mem., at 7-8.)  Plaintiffs contend that the PFAC sufficiently alleges that Boyle had either actual knowledge of the incidents, or, where "parents reported the anti-Semitic harassment to an assistant principal" at the middle school, "it is reasonable to infer that Principal Boyle had actual knowledge of at least some of these meetings."  (Pls.' Reply, at 8.)  I agree with Defendant.

As discussed above, Plaintiffs may not rely upon a *respondeat superior* theory to

─────────────────────────

notified of this subsequent harassment or otherwise had actual knowledge of it.

establish Boyle's actual knowledge of events he did not witness or was not notified about.  <u>See</u>

<u>Hayut</u>, 352 F.3d at 753.  Further, although the PFAC adequately alleges that Boyle had actual

knowledge of the event involving the forcibly drawn swastika, the pleading fails to allege that

Boyle's response was clearly unreasonable; rather, it states that the School District's response

was.  (<u>See</u> PFAC ¶ 66 (emphasis added) (Boyle's response "makes [it] clear that the *School*

*District* failed to educate and train employees in the highest levels of leadership about how to

respond to anti-Semitic discrimination and harassment").)  Such an allegation fails to establish

Boyle's unlawful intent or purpose and as such, O.C.'s proposed § 1983 claim against him is

futile.

Accordingly, O.C. is granted leave to interpose individual-capacity claims against

Steinberg and Winter.  Leave is denied as to Boyle.

### iii.    D.C.'s Proposed § 1983 Claims

D.C. attended the middle school from September 2007 through June 2010.  He has been

attending the high school since September 2010.  (PFAC ¶ 73.)  He raises § 1983 claims against

Steinberg and Boyle in the PFAC.  The factual allegations raised in that pleading with respect to

D.C. include the following:

> From sixth through eighth grades, students frequently threw change into garbage
> cans and told D.C. to "go get it."  (<u>Id.</u> ¶ 76.)  From sixth through ninth grades,
> students "threw change at D.C. on an almost daily basis" because of his religion and
> ethnicity. (<u>Id.</u> ¶ 75.)  From sixth through ninth grades, students "threatened to burn
> D.C. in the oven–a reference to the Holocaust." (<u>Id.</u>)  In eighth grade, "students sang
> songs about killing 'niggers' and Jews in D.C.'s presence." (<u>Id.</u> ¶ 76.)  In eighth and
> ninth grades, students emptied D.C.'s backpack on the ground because of his religion
> and ethnicity.  (<u>Id.</u>)  In ninth grade, a student "frequently slapped D.C. in the face
> while calling him 'Kike.'" (<u>Id.</u> ¶ 75.)  In ninth grade, "students repeatedly called
> D.C. 'Ashes,' a reference to burning Jews during the Holocaust." (<u>Id.</u> ¶ 76.)  In tenth
> grade, several students "regularly bullied Jewish students in front of" their math

20

teacher. (Id.) "Although D.C. complained about the bullying, [the math teacher] failed to take any corrective action." (Id.)

The PFAC then alleges in a separate paragraph that:

> School officials and employees, including [the middle school] Principal and Assistant Principal, [the middle school math teacher], and [the high school] Principal Hopmayer,[11] knew about many of the bullying incidents that D.C. suffered while attending their respective schools, but failed to take appropriate corrective action to address the rampant anti-Semitic discrimination and harassment.

(Id. ¶ 77.)

Defendant argues that the allegations regarding D.C. are insufficient to establish that the proposed new defendants were either: (1) "directly involved in any of the alleged student-on-student harassment" or (2) "deliberately indifferent to it." (See Def.'s Mem., at 4, 7-8.[12]) I agree. As discussed above, Plaintiffs may not rely upon a *respondeat superior* theory in order to establish a supervisor's actual knowledge. See Hayut, 352 F.3d at 753. The PFAC does not contain factual allegations that plead that Steinberg or Boyle witnessed or were notified about the incidents of student-on-student harassment experienced by D.C. Rather, it contains a conclusory allegation that school officials (but does not specifically identify either Steinberg or Boyle) "knew" about the incidents. Such a "formulaic recitation" of the second Gant element, without additional factual allegations establishing the basis of this knowledge, is insufficient to plausibly show entitlement to relief. Twombly, 550 U.S. at 555; see Iqbal, 556 U.S. at 678-79; DiStiso, 691 F.3d at 241; Gant, 195 F.3d at 141 n.6. D.C.'s proposed § 1983 claims against

---

[11] The PFAC alleges that Hopmayer has been the Principal of the high school since October 2007. (PFAC ¶ 25.) As noted above, Defendant does not oppose Plaintiffs' motion to amend in order to add Hopmayer as a defendant. (See supra n.2.)

[12] Defendant's legal brief does not mention D.C. in its section regarding Boyle. The Court presumes this was an oversight. (See Def.'s Mem., at 7-8.)

21

Steinberg and Boyle are futile.

Accordingly, D.C. is denied leave to interpose individual-capacity claims against Steinberg and Boyle.

### iv.    A.R.'s Proposed § 1983 Claims

A.R. attended the middle school from September 2006 through June 2009.  He has been attending the high school since March 2010.[13]  (PFAC ¶ 81.)  He raises § 1983 claims against Steinberg, Boyle, and Peters[14] in the PFAC.  The factual allegations raised in that pleading with respect to A.R. include the following:

- In seventh grade, "students threw pennies and other coins at [A.R.] and shouted ethnic slurs, including 'stupid Jew.'"  (Id. ¶ 83.)  A.R. witnessed swastikas drawn on desks and walls.  (Id.)  In eighth grade, students threw coins at A.R., "pestered A.R. and his friends for change," and called A.R. "stupid Jew."  (Id. ¶ 84.)  A student also placed "a piece of tin foil on his head in the cafeteria and said to A.R., 'I have a yarmulke; I am a Jew just like you.'"  (Id.)  Many of the incidents occurred in the cafeteria and were witnessed by teachers and staff.  (Id. ¶¶ 83-84.)  In eighth grade, A.R. and another student got into a fight after "[t]he student provoked A.R. because of his Jewish ancestry and religion."  (Id. ¶ 86.)  At some point in middle school, "a student asked A.R. if he was Jewish, then told A.R. the following anti-Semitic 'joke': 'What is the difference between a Jew and a pizza?  One doesn't scream as it gets put in the oven.'"  (Id. ¶ 85.)
- At some point in middle school, a student also told A.R. that A.R. was responsible for the September 11, 2001 terrorist attacks.  (Id.)  A.R. reported this incident to Boyle, who "placed the student on in-school suspension and asked the student to write A.R. an apology."  No apology was received and Boyle did not respond further.  (Id. ¶ 85.)
- On at least five different occasions when A.R. was in middle school, A.R.'s parents met with Peters "to address the rampant anti-Semitic bullying."  (Id. ¶ 87.)  "Neither Mr. Peters nor Principal Boyle took appropriate steps" in

---

[13] A.R. attended part of ninth grade in a school outside the School District.  (See PFAC ¶ 81.)

[14] The PFAC alleges that Peters was an Assistant Principal of the middle school from September 2006 through September 2010.  (PFAC ¶ 24.)

22

response.  (Id.)

Defendant argues that the allegations regarding A.R. are insufficient to establish that the proposed new defendants were either: (1) "directly involved in any of the alleged student-on-student harassment" or (2) "deliberately indifferent to it."  (See Def.'s Mem., at 4, 7-9.)  I agree in part.

As discussed above, Plaintiffs may not rely upon a *respondeat superior* theory in order to establish a supervisor's actual knowledge.  See Hayut, 352 F.3d at 753.  With respect to Steinberg, the PFAC does not contain factual allegations that he witnessed or was notified about any of the incidents experienced by A.R.  Accordingly, A.R.'s proposed § 1983 claim against him is futile.  However, with respect to Boyle and Peters, the PFAC does allege that A.R. or his parents directly communicated to them.  As discussed above, such direct reporting is sufficient to give those defendants actual knowledge of the harassment.  See DiStiso, 691 F.3d at 243-44.

With respect to Boyle, however, the PFAC alleges that he responded to A.R.'s complaint about the September 11, 2001 comment.  Specifically, it alleges that Boyle gave the student in-school suspension and told the student to write A.R. an apology.  To the extent that the PFAC alleges that this response was not "appropriate," (id. ¶ 87), such an allegation is conclusory and therefore disregarded, see Harris, 572 F.3d at 72.  Moreover, to the extent that the PFAC alleges that this response was unreasonable because "Boyle did not follow up to ensure that A.R. received the apology," (PFAC ¶ 85), such an allegation establishes, at most, Boyle's mere negligence.  As discussed above, the standard for "deliberate indifference 'is not a mere "reasonableness" standard.'"  DiStiso, 691 F.3d at 241 (quoting Gant, 195 F.3d at 141).  Without more, the PFAC fails to adequately plead facts that show that Boyle's response was intentional

23

or purposeful.  Accordingly, A.R.'s proposed § 1983 claim against Boyle is futile.

With respect to Peters, the PFAC alleges that A.R.'s parents notified him at least five times about incidents of student-on-student harassment.  It also alleges that Peters took no action.  As discussed above, this allegation sufficiently pleads a clearly unreasonable response.  See DiStiso, 691 F.3d at 243-45.  The proposed § 1983 claim by A.R. against Peters is not futile.

Accordingly, A.R. is granted leave to interpose an individual-capacity claim against Peters.  Leave is denied as to Steinberg and Boyle.

### v.    D.R.'s Proposed § 1983 Claims

D.R. attended the middle school from September 2008 through June 2011.  He has been attending the high school since September 2011.  (PFAC ¶ 92.)  He raises § 1983 claims against Steinberg, Boyle, and Peters in the PFAC.  The factual allegations raised in that pleading with respect to D.R. include the following:

- In September and October 2008, when D.R. was sixth grade, students asked him if he was Jewish and if he had "Jew gold."  (Id. ¶ 94.)  They also threw coins at him.  (Id.)  He reported the incidents to lunchroom monitors, guidance office staff, and Peters.  (Id.)  No action was taken.  (Id.)
- "In November 2008, D.R. filed a report with the school administration regarding the anti-Semitic harassment and discrimination he was suffering."  (Id. ¶ 95.)  An announcement was made over the loudspeaker that such conduct would result in punishment.  (Id.)  Students refrained from further harassment for a period of about a month.  (Id.)  In December 2008, students asked D.R. if he was Jewish, slapped him, hit him, cursed at him, and threw change and other objects at him.  (Id. ¶ 96.)  School officials made one student write D.R. an apology.  (Id.)  No further action was taken.  (Id.)  In January 2009, students called D.R. a "stupid Jew" and threw coins at him.  (Id. ¶ 97.)  D.R. also witnessed swastikas drawn on school property.  (Id.)  He "reported these incidents to school officials" but no action was taken.  (Id.)
- On at least five different occasions when D.R. was in middle school, D.R.'s parents met with Peters "to address the rampant anti-Semitic bullying."  (Id. ¶ 98.)  "Neither Mr. Peters nor Principal Boyle took appropriate steps" in response.  (Id.)

24

Defendant argues that the allegations regarding D.R. are insufficient to establish that the proposed new defendants were either: (1) "directly involved in any of the alleged student-on-student harassment" or (2) "deliberately indifferent to it."  (See Def.'s Mem., at 4, 7-9.)  I agree in part.

As discussed above, Plaintiffs may not rely upon a *respondeat superior* theory in order to establish a supervisor's actual knowledge.  See Hayut, 352 F.3d at 753.  With respect to Steinberg and Boyle, the PFAC does not contain factual allegations that plead that they witnessed or were notified about any of the incidents experienced by D.R.  Accordingly, D.R.'s proposed § 1983 claims against them are futile.

However, with respect to Peters, the PFAC does allege that D.R.'s parents directly communicated to him.  As discussed above, such direct reporting is sufficient to give Peters actual knowledge that D.R. was experiencing student-on-student harassment on the basis of his religion or ethnicity.   See DiStiso, 691 F.3d at 243-44.  The PFAC also alleges that Peters took no action.  As discussed above, this allegation sufficiently pleads a clearly unreasonable response.  See id. at 245.  The proposed § 1983 claim by D.R. against Peters is not futile.

Accordingly, D.R. is granted leave to interpose an individual-capacity claim against Peters.  Leave is denied as to Steinberg and Boyle.

### 3.    *NYCRL Claims*

Defendant argues that the PFAC's proposed NYCRL claims against Steinberg, Fisch, Winter, Boyle, and Peters are futile "[f]or the same reasons" that they argue the proposed § 1983 claims are futile.  (Def.'s Mem., at 10.)  Plaintiffs contend that the requisite elements of the state

law claims are sufficiently pled.  (See Pls.' Reply, at 9-10.)  I agree in part with each party.

"[F]ederal courts interpreting New York state civil rights law have looked to federal law as a guide to their analysis of discrimination claims."  Lorenz v. Managing Dir., St. Luke's Hosp., No. 09 Civ. 8898(DAB)(JCF), 2010 WL 4922267, at *9 (S.D.N.Y. Nov. 5, 2010) (Report & Recommendation), adopted by 2010 WL 4922541 (S.D.N.Y. Dec. 2, 2010); see also, e.g., Drayton v. Toys 'R' Us Inc., 645 F. Supp. 2d 149, 163-64 (S.D.N.Y. 2009) (citing Joseph v. N.Y. Yankees P'ship, No. 00 Civ. 2275(SHS), 2000 WL 1559019, at *6 (S.D.N.Y. Oct. 13, 2000)) (the standard governing NYCRL § 40 claims is identical to the standard governing federal discrimination claims); Howe v. Town of Hempstead, No. 04 Civ. 656(DRH)(ETB), 2006 WL 3095819, at *10 (E.D.N.Y. Oct. 30, 2006) (citing Long v. Marubeni Am. Corp., 406 F. Supp. 2d 285, 300 (S.D.N.Y. 2005)) (personal involvement of individual defendant required under N.Y. Civ. Rights Law § 40-c).  Accordingly, for the reasons set forth in Part III(B)(2) above, the state law claims asserted by the following plaintiffs against the following individuals in their individual capacities are not futile: (1) T.E. against Fisch and Winter; (2) O.C. against Winter; (3) A.R. against Peters; and (4) D.R. against Peters.  However, the state law claims asserted by the following plaintiffs against the following individuals in their individual capacities are futile: (1) T.E. against Boyle; (2) O.C. against Boyle; (3) D.C. against Steinberg; (4) A.R. against Boyle; and (5) D.R. against Boyle.[15]

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' motion to amend is **GRANTED IN PART**

---

[15] The NYCRL claims are asserted against Steinberg in his official capacity only.  I also note that  although D.C. raises a § 1983 claim against Steinberg and Boyle, he raises a state law claim against Steinberg only.

**AND DENIED IN PART**.  To the extent Plaintiffs wish to seek leave to further amend their pleading to address defects identified herein, they shall do so within 30 days.  The Clerk is respectfully directed to terminate the motion.  (Dkt. 11.)


Date:   December 6, 2012
        White Plains, New York

                                        **SO ORDERED**


                                        _____
                                        Paul E. Davison
                                        United States Magistrate Judge

27